1  OPHIR JOHNA (SBN 228193)
   MAYNARD NEXSEN LLP
2  10100 Santa Monica Boulevard, Suite 550
   Los Angeles, CA 90067
3  Telephone:    310.596.4500

4  Attorneys for Defendant
   Principal Life Insurance Company

5

6

7

8              **UNITED STATES DISTRICT COURT**

9            **NORTHERN DISTRICT OF CALIFORNIA**

10

11

12  JUDITH RINGSEIS, Individually, and on        Case No.   3:25-cv-04593
    Behalf of the Class,

13              Plaintiff,                         **NOTICE OF REMOVAL**

14        v.                                       [Filed concurrently with Declaration of John
                                                   R. Williams]
15  PRINCIPAL LIFE INSURANCE COMPANY,
    an Iowa Corporation; and DOES 1 through 10,
16  inclusive,

17              Defendant.

18

19

20

21

22

23

24

25

26

27

28

-1-

PLEASE TAKE NOTICE that Defendant Principal Life Insurance Company ("Principal") hereby removes Case Number CV0006009 from the Superior Court of the State of California for the County of Marin to this Court under the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part in 28 U.S.C. §§ 1332(d), 1441, 1446 and/or 1453. This Notice of Removal is being filed without prejudice to the objections and defenses of Principal. Removal of this action is proper for the following reasons:

## I.    JOINDER

Principal is the only non-fictitious defendant in the civil action filed by Plaintiff Judith Ringseis ("Plaintiff") against Principal in the Superior Court of the State of California for the County of Marin, assigned Case No. CV0006009. Therefore, no joinder is necessary. *See* 28 U.S.C. § 1441(a); *Salveson v. Western Bankcard Assn.*, 731 F.2d 1423, 1429 (9th Cir. 1984). A true and correct copy of Plaintiff's Complaint, and all other documents served on or by Principal in the state court is attached as Exhibit "A."

## II.    REMOVAL IS TIMELY

Principal was first served with process in this action effective May 19, 2025 when it executed a Notice of Acknowledgment pursuant to section 415.30 of the California Code of Civil Procedure. Under California Code of Civil Procedure § 415.30(c), "[s]ervice of a summons pursuant to this section is deemed complete on the date a written acknowledgment of receipt of summons is executed . . . ." Removal is timely under 28 U.S.C. § 1446(b) in that removal is sought within thirty (30) days after service of the Summons and Complaint.

## III.    CAFA JURISDICTION EXISTS

This action is removable under CAFA and under 28 U.S.C. §§ 1332, 1441, 1446 and/or 1453 in that this lawsuit is a putative class action where: (1) the putative class size exceeds 100; (2) Plaintiff and Principal, the only named defendant, are citizens of different states; and (3) the aggregate amount in controversy for the putative class exceeds $5,000,000, exclusive of costs and interest, as set forth more fully below.

## IV. THE ALLEGED PUTATIVE CLASS EXCEEDS 100 MEMBERS.

CAFA requires that the putative class contain at least 100 putative class members.  28 U.S.C. § 1332(d)(5).

Plaintiff defines the class as follows:

> All owners, or beneficiaries upon a death of the insured, of Defendant's life insurance policies that were issued or delivered by Defendant in California, and in force on or after January 1, 2013, and which underwent or will undergo lapse or termination for the nonpayment of premium without Defendant first providing every notice, grace period, and offer of designation required by Insurance Code Sections 10113.71 and 10113.72.

(Compl. at ¶ 52).

Plaintiff contends that the class is comprised of "hundreds and perhaps thousands of members."  *Id.* at ¶ 53.  In addition, as stated in the Declaration of John R. Williams (filed concurrently herewith), there were more than 100 individual California residents insured under individual life insurance policies in California.  (*Id.* at ¶¶ 4, 5).  As of May 20, 2025, Principal had in excess of 100 term life and whole life insurance policies that had lapsed since January 1, 2013.  Thus, there are more than 100 members in the putative class.

### A. The Requisite Diversity of Citizenship Exists

The second requirement under CAFA is minimal diversity, which requires that at least one putative class member be a citizen of a different state than that of any one defendant.  *See* 28 U.S.C. § 1332(d)(2).

Here, Principal is, and at all relevant times was, a corporation organized and existing under the laws of the State of Iowa with its principal place of business in Iowa.  (Williams Decl. at ¶ 3).  It is therefore a citizen of Iowa for diversity purposes.  28 U.S.C. § 1332(c)(1).

Plaintiff is a "resident and citizen of Marin County, California."  (Compl. at ¶ 11).  Thus, Plaintiff is a citizen of the State of California.

Accordingly, there is diversity of citizenship between Plaintiff and Principal and the prerequisite of minimal diversity under CAFA is met.

### B.    The Amount in Controversy Is at Least $5,000,000.

The third and final requirement under CAFA is that the amount in controversy exceeds $5,000,000 for the putative class in the aggregate, exclusive of costs and interest.  28 U.S.C. § 1332(d)(2). A defendant's notice of removal under CAFA "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014); *see also Arias v. Residence Inn*, 936 F.3d 920, 924 (9th Cir. 2019) ("[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied.").  Evidence establishing the amount in controversy is only required once the plaintiff challenges or the court questions the defendant's allegations.  *Id.*

"[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *See Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15, 417-18 (9th Cir. 2018). The Complaint is, therefore, necessarily reviewed by the Court as to the amount in controversy. *See LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).

As noted above, Plaintiff's putative class action Complaint asserts a putative class of "hundreds" or "thousands" of persons. (Compl. at ¶ 53.) Plaintiff's putative class action alleges that Principal failed to comply with California Insurance Code sections 10113.71 and 10113.72 (the "Statutes") for individual life insurance policies Principal that lapsed after the effective date of the Statutes and that it still does not fully comply with the grace period provisions required by the Statutes. (E.g., Compl. at ¶¶1-10, 28-35.) While Principal disputes these allegations, Plaintiff's allegations are properly considered for purposes of removal.

Plaintiff alleges that James Ringseis, Plaintiff's husband, purchased an adjustable premium life insurance policy from Principal Mutual Life Insurance with an original face value of $286,276 in 1991 ("the Policy"). (Compl. at ¶¶ 37, 38.)

1    Plaintiff alleges that the Policy lapsed in August 2019, and that the lapse was improper and

2   termination ineffective because Principal failed to provide timely notice of the pending lapse and

3   failed to provide the grace period required by the Statutes.  (*Id.* at ¶¶ 47, 48, & 50).

4    Based on these allegations, Plaintiff asserts one cause of action for Unfair Competition

5   under Cal. Bus. & Prof. Code §§ 17200, *et seq.* (the "UCL"), seeking restitution and injunctive

6   relief individually and on behalf of the putative class (which, as noted above, he contends was

7   subject allegedly to improper lapse of their policies in violation of the Statutes). (Compl. at ¶¶62-

8   74.) Although the amount of restitution is not specified, Plaintiff contends that she and the

9   members of the class she hopes to represent suffered "economic injury" in the form of "lost policy

10  coverage, lost policy benefits, wrongfully collected or inflated premiums, and/or diminution of the

11  value of their insurance policies." (*Id.* at ¶ 69.)

12    The amount of policy benefits is properly considered among the amount placed in

13  controversy by Plaintiff's complaint. *See Clevenger v. Welch Foods Inc.*, 2023 WL 2390630, at

14  *2 (C.D. Cal. Mar. 7, 2023).

15    As set forth in the Williams Declaration, over 100 California life insurance policies have

16  been issued and lapsed since January 1, 2013, comprising a total face amount of over $5,000,000.

17  (Williams Decl., ¶ 5.)

18    The Complaint also alleges Plaintiff did not receive the proceeds from Mr. Ringseis's life

19  insurance policy, which had a face value of $286,276. (Compl., ¶ 39, 51.) Plaintiff contends her

20  claims are representative of other putative class members because Plaintiff and all class members

21  were damaged by the same alleged wrongful conduct of Principal—such as its alleged failure to

22  satisfy the requirements under California Insurance Code §§ 10113.71 and 10113.72. (*Id.* ¶¶ 52–

23  61.) Coupling these allegations with Plaintiff's other allegations that (a) Plaintiff has lost policy

24  coverage and policy benefits of $286,276 (*id.* at 69) and (b) the proposed Class contains "hundreds

25  and perhaps thousands of members" (Compl., ¶ 53), the amount in controversy based on Plaintiff's

26  averments exceeds $5,000,000.

27    **V.    DIVERSITY JURISDICTION EXISTS**

28    This Court also has diversity jurisdiction under 28 U.S.C. § 1332, and therefore Principal

-5-

may remove this action to this Court under 28 U.S.C. § 1441(b). Both now and at the time of the original filing of this action, there is complete diversity of citizenship between Plaintiff and the only properly joined defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

### A.  Principal Is Completely Diverse from the Plaintiff.

As explained above, the named Plaintiff in this putative class action is alleged to be a citizen of California, and Principal is an Iowa corporation with its principal place of business in Iowa. (Compl., ¶¶ 11; Williams Decl. at ¶ 3.)

Plaintiff's use of fictional defendants, Does 1 through 10, does not destroy diversity or divest this Court of jurisdiction. *See Gardiner Family, LLC v. Crimson Res. Mgmt. Corp.,* No. 15-cv-751, 2015 WL 5646648, at *6 (E.D. Cal. Sept. 24, 2015) ("The Court concludes that where . . . the charges against the Does are so general that no clues exist as to their identity, citizenship, or relationship to the action, the Court may disregard these fictitious defendants for jurisdictional purposes.").

### B.  The Amount-in-Controversy Requirement Is Satisfied.

In the putative class-action context, the amount-in-controversy requirement is satisfied where at least one plaintiff individually meets the $75,000 threshold. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 549 (2005).

Here, the amount in controversy exceeds $75,000 individually as to the named Plaintiff.

Plaintiff specifically alleges that Principal violated California Insurance Code §§ 10113.71 and 10113.72, which allegedly caused Plaintiff not to receive the proceeds from Mr. Ringseis's life insurance policy, which had a face value of $286,276. (Compl., ¶ 39, 51.)

When considering the $286,276 face value of the policy at issue with Plaintiff's additional requests for injunctive relief, restitution, and revival of the Policy, there is no question that the total amount in controversy exceeds $75,000.

Thus, apart from CAFA, this action is also removable under 28 U.S.C. §§ 1332, 1367, and 1441.

## VI.    OTHER REMOVAL REQUIREMENTS

The Action was filed in the Superior Court of the State of California, County of Marin, and venue is therefore proper in this Court pursuant to 28 U.S.C. §§ 84(a), 1391, 1441(a), and 1446.

True and correct copies of the following documents are attached to this Notice of Removal:

- Notice and Acknowledgment of Receipt;

- The Summons;

- Complaint;

- Civil Case Cover Sheet;

- Notice of Settlement of Entire Case (blank Form CM-200);

- Notice – Judicial Assignment; Notice – Case Management Conference;

- Case Management Statement (blank Form CM-110);

- Alternative Dispute Resolution (ADR) Informational Notice (CV006) and

- Defendant Principal Life Insurance Company's Answer to Plaintiff Judith Ringseis's Unverified Class Action Complaint.

These documents constitute the entire process and pleadings filed in the state court action.

Written notice of the filing of this Notice of Removal has been given to the adverse party and a copy has been filed with the Clerk of the Superior Court of the State of California, County of Marin, in accordance with the provisions of 28 U.S.C. § 1446(d).

Principal, by filing this Notice of Removal, does not waive any defenses or objections available to it under the law. Principal reserves the right to amend or supplement this Notice of Removal. Should the propriety of this Notice of Removal be questioned by Plaintiff or the Court, Principal requests a hearing and opportunity to present evidence in support of this Notice of Removal.

-7-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WHEREFORE, Principal prays that the above action pending in the Superior Court of California for the County of Marin be removed from that Court to this Court.

Dated:  May 30, 2025                              MAYNARD NEXSEN LLP


                                                          */s/ Ophir Johna*
                                       By:          OPHIR JOHNA
                                                    Attorneys for Defendant
                                                    Principal Life Insurance Company

# EXHIBIT A

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:       STATE BAR NO:<br>NAME: Jack B. Winters, Jr. (SBN 82998); Sarah Ball (SBN 292337)<br>FIRM NAME: WINTERS & ASSOCIATES<br>STREET ADDRESS: 8489 La Mesa Blvd.<br>CITY: La Mesa         STATE: CA   ZIP CODE: 91942<br>TELEPHONE NO.: 619.234.9000     FAX NO.: 619.750.0413<br>E-MAIL ADDRESS: jwinters@singletonschreiber.com<br>ATTORNEY FOR (Name): Plaintiff Judith L. Ringseis, Individually, and on Behalf of the Class | FOR COURT USE ONLY |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF MARIN<br>STREET ADDRESS: 3501 Civic Center Drive<br>MAILING ADDRESS: P.O. Box 4988<br>CITY AND ZIP CODE: San Rafael, CA 94903<br>BRANCH NAME: HALL OF JUSTICE |

| |
|---|
| Plaintiff/Petitioner: Judith L. Ringseis, Individually, and on Behalf of the Class<br>Defendant/Respondent: Principal Life Insurance Company, an Iowa Corporation |

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>CV0006009 |

TO (insert name of party being served): PRINCIPAL LIFE INSURANCE COMPANY, an Iowa Corporation

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: April 30, 2025

| | |
|---|---|
| Silvia Flores<br>(TYPE OR PRINT NAME) | *Silvia Flores*<br>(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE) |

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):

1. ☒ A copy of the summons and of the complaint.
2. ☒ Other (specify):

    Civil Case Cover Sheet; Notice of Settlement of Entire Case (blank Form CM-200); Notice – Judicial Assignment; Notice – Case Management Conference; Case Management Statement (blank Form CM-110); and Alternative Dispute Resolution (ADR) Informational Notice (CV006).

(To be completed by recipient):

Date this form is signed:    05/19/2025

Angel West on behalf of Principal Life Insurance Company.     *Angel A. West*

| | |
|---|---|
| (TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,<br>ON WHOSE BEHALF THIS FORM IS SIGNED) | (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF<br>ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)<br>outside counsel for Principal Life Insurance<br>Company |

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ELECTRONICALLY FILED
Superior Court of California
County of Marin
04/21/2025
James M. Kim, Clerk of the Court
By: J. Chen, Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PRINCIPAL LIFE INSURANCE COMPANY, an Iowa Corporation; and DOES 1 through 10, Inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
JUDITH L. RINGSEIS, Individually, and on Behalf of the Class

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

   Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

   Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es)*: Marin County Superior Court

Hall of Justice, 3501 Civic Center Drive, San Rafael, CA 94903

CASE NUMBER:
*(Número del Caso)*: CV0006009

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*:
Jack B. Winters, Jr.; Sarah Ball, WINTERS & ASSOCIATES, 8489 La Mesa Blvd., La Mesa, CA 91942; Telephone (619) 234-9000

DATE:
*(Fecha)* 04/21/2025        James M. Kim        Clerk, by _____, Deputy
                                                 *(Secretario)*  J. Chen  *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* PRINCIPAL LIFE INSURANCE COMPANY, an Iowa Corporation

   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

EXHIBIT A
11

**WINTERS & ASSOCIATES**
Jack B. Winters, Jr. (SBN 82998)
Sarah Ball (SBN 292337)
8489 La Mesa Boulevard
La Mesa, California 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
Email: jwinters@singletonschreiber.com
Email: sball@einsurelaw.com

**NICHOLAS & TOMASEVIC, LLP**
Craig M. Nicholas (SBN 178444)
Alex Tomasevic (SBN 245598)
Jake W. Schulte (SBN 293777)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nicholaslaw.org
Email: atomasevic@nicholaslaw.org
Email: jschulte@nicholaslaw.org

Attorneys for Plaintiff JUDITH L. RINGSEIS,
Individually, and on Behalf of the Class

*For Additional Counsel, See Next Page*

**ELECTRONICALLY FILED**
Superior Court of California
County of Marin
**04/21/2025**
James M. Kim, Clerk of the Court
By: J. Chen, Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF MARIN, GENERAL UNLIMITED

| | |
|---|---|
| JUDITH L. RINGSEIS, Individually, and on Behalf of the Class,<br><br>Plaintiff,<br><br>vs.<br><br>PRINCIPAL LIFE INSURANCE COMPANY, an Iowa Corporation; and DOES 1 through 10, Inclusive,<br><br>Defendants. | Case No.:  CV0006009<br><br>**INDIVIDUAL AND CLASS ACTION COMPLAINT FOR EQUITABLE RELIEF UNDER CALIFORNIA'S UNFAIR COMPETITION LAWS** |

INDIV. AND CLASS ACTION COMPLAINT

EXHIBIT A
12

1 | **SINGLETON SCHREIBER, LLP**
CHRISTOPHER R. RODRIGUEZ, SB #212274
2 | ANDREW D. BLUTH, SB #232387
MICHELLE M. MEYERS, SB #236387
3 | TRENT J. NELSON, SB #340185
1414 K Street, Suite 470
4 | Sacramento, California 95814
Telephone: (916) 248-8478
5 | Facsimile: (619) 255-1515
E-Mail: crodriguez@singletonschreiber.com
6 | E-Mail: abluth@singletonschreiber.com
E-Mail: mmeyers@singletonschreiber.com
7 | E-Mail: tnelson@singletonschreiber.com

8 | Attorneys for Plaintiff JUDITH L. RINGSEIS,
Individually, and on Behalf of the Class
9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

2

INDIV. AND CLASS ACTION COMPLAINT

EXHIBIT A

13

1    Plaintiff JUDITH L. RINGSEIS, Individually, and on Behalf of the Class, makes the

2    following allegations against Defendants PRINCIPAL LIFE INSURANCE COMPANY, an Iowa

3    Corporation; and DOES 1 through 10, Inclusive, as follows:

4                            **I.    NATURE OF THE CASE**

5        1.    Since January of 2013, Principal Life Insurance Company ("PLIC") has

6    wrongfully terminated thousands of life insurance policies in violation of California law. Plaintiff

7    and the Class of Defendant's policy owners and vested beneficiaries are victims of PLIC's

8    ongoing unlawful practices, and they are entitled to the equitable relief afforded by California's

9    Unfair Competition Law (the "UCL"), including restitution and an injunction.

10       2.    Since January 1, 2013, every life insurer doing business in California, before it can

11   lawfully lapse or terminate a life insurance policy for nonpayment of premium, must strictly

12   comply with the notice and grace period provisions found in California Insurance Code Sections

13   10113.71 and 10113.72 ("the Statutes"), as well as existing in California common law. There are

14   no exceptions. The legal requirements of the Statutes are simple.

15       3.    First, every life insurance policy must "contain" and every insurer must actually

16   provide, in writing, as an endorsement or attachment to the written policy, a 60-day grace period

17   after any missed premium payment. During this time, premiums received must be accepted

18   without condition and the policy owner and the insurer may not declare the policy lapsed or

19   terminated. Should the insured die during the grace period, the insurer must pay the policy

20   benefits.

21       4.    Second, the Statutes mandate that no policy may lapse or be terminated until and

22   unless, after a payment is due and is unpaid, the insurer mails a 30-day warning notice, not only to

23   the policy owner, but also to any assignee, any person with interest in the policy, and a designee

24   selected by the policy owner to receive such notice. The notice must be mailed by First Class

25   Mail after the initial premium is due and is unpaid and must be an accurate description of the

26   status of the policy. Mailing the notice with an inaccurate grace period does not constitute a

27   proper mailing. Further, if the notices mailed are in fact returned by the USPS, such notices are

28   deemed void. There is no presumption of compliance with the First Class Mail requirements when

1    notices are returned.

2        5.    Next, every policy owner must be regularly notified in writing of his or her

3    right to designate another individual or designee to receive lapse warnings.

4        6.    Finally, under the terms of the Statutes, no insurer may lapse or terminate a life

5    insurance policy for nonpayment without first strictly complying with all these provisions. Failure

6    to comply with all these notice provisions voids any attempted termination or lapse as a matter of

7    law until and unless there has been compliance. None of these requirements are satisfied by

8    substantial performance, nor are they excused by the conduct of the policy owner or the alleged

9    subjective intent of the policy owner. And in the circumstance where the notice is returned as

10   "undelivered" by the United States Post Office, the notice is void and the notice provisions of the

11   Statutes have not been satisfied.

12       7.    Since January 1, 2013, PLIC has systematically and purposely failed to provide

13   full 60-day grace periods on all policies, proper notices of pending lapse or termination, or inform

14   policy owners of their right to designate a third party to receive notices of lapse.

15       8.    Moreover, since January 1, 2013, PLIC has become aware of its failures and has

16   failed to take appropriate corrective action. Instead, PLIC appears to have doubled down and

17   made the decision to ignore the law, ignore court rulings, and deal with the occasional individual

18   complaint without regard to its obligation to apply these rules properly and completely to all its

19   varied life insurance products sold in this state.

20       9.    PLIC's disregard for the law is widespread. Indeed, thousands of policy owners

21   have lost and continue to lose the benefit, value, and security of their life insurance; have been

22   and continue to be forced into unnecessary reinstatements; and in many instances have lost all

23   reasonable access to any insurance at all. Ultimately, PLIC has robbed thousands of its

24   beneficiaries of policy benefits and thousands of insureds of the ability to have life insurance

25   protection.

26       10.   Plaintiff is a victim of PLIC's failure to appreciate the importance and mandates of

27   the Statutes. In or around June 2019, PLIC wrongfully terminated Plaintiff's policy without

28   providing all the Statutes' protections. She now brings this action for equitable relief, not only for

her benefit, but also on behalf of the numerous California policy owners and beneficiaries who have also been denied and continue to be denied the benefits of California law and their policies.

## II.  **THE PARTIES**

11.    Plaintiff JUDITH L. RINGSEIS is an individual and the beneficiary of a life insurance policy that insured her late husband's life (sometimes "the Policy"). At all relevant times, Plaintiff was and has been a resident and citizen of Marin County, California. Plaintiff pursues these claims and causes of action individually, on her own behalf, and on behalf of the Class.

12.    Defendant PRINCIPAL LIFE INSURANCE COMPANY is an Iowa Company doing business in California. It is registered to do business in California and is licensed by the California Department of Insurance to sell life insurance here in California. From 2013 until the present, PLIC was the insurer responsible for administering and honoring the class policies, including the Policy.

13.    Defendants DOES 1 through 10, inclusive, are various forms of insurance companies, agents, brokers, or other entities engaged in and operating in conjunction with PLIC in a manner and fashion unknown to Plaintiff at this time so as to cause and/or contribute to the injuries herein described.

14.    Plaintiff is informed and believes, and on that basis alleges, that now and at all times relevant, each Defendant was and is the agent, employee, employer, servant, representative, partner and/or co-venturer of each of the other Defendants and was acting and is acting within the scope of such authority and relationship and with the knowledge, approval, consent, and ratification of the other Defendants, as applicable, in each of the transactions, events, or other matters herein described.

## III. **JURISDICTION**

15.    This is a civil matter of which the courts of California have jurisdiction. This action arose in the state of California and exclusively involves application of laws of the state of California, as well as life insurance policies issued or delivered in California.

16.    Plaintiff is informed and believes that the controversy at issue solely involves a

1  dispute confined to the state of California, its laws, and the ultimate jurisdiction of the

2  courts of California.

3      17.    Plaintiff is informed and believes that all injuries arose primarily in the

4  state of California and all related conduct of the Defendant occurred solely within the state

5  of California.

6      18.    PLIC is authorized to conduct business in this state and has intentionally availed

7  itself of the laws and markets within this state and does substantial business in this state. PLIC's

8  business within this state is substantial and consists of the marketing, sale, delivery, maintenance,

9  and administration of thousands of life insurance policies, representing billions of dollars in

10  benefits, as well as the maintenance of dozens of sales and agent offices in California.

11      19.    PLIC advertises throughout California, including throughout this county, and

12  conducts significant sales and related business activities in California and in this county, in

13  general, as well as specifically regarding the marketing, sale, and administration of life insurance

14  policies.

15      20.    PLIC further administers and receives premium payments from policy owners who

16  may have originally received their PLIC policies in some state other than California, but

17  thereafter have moved their residences to the state of California and have continued making

18  premium payments from California, thus invoking the jurisdiction of the state of California and

19  requiring compliance with the Statutes.

20           **IV.  ENACTMENT AND APPLICABILITY OF
                INSURANCE CODE SECTIONS 10113.71 AND 10113.72**

21

22      21.    In 2012, after extensive and open hearings and public consideration, including with

23  Defendant and all other major insurance companies doing business in California, the California

24  Legislature enacted Insurance Code Sections 10113.71 and 10113.72 (i.e., the "Statutes"), which

25  created preconditions for the termination and lapse of life insurance policies. The Statutes were

26  written to avoid unintended forfeiture of life insurance policies primarily being suffered by the

27  elderly and the ill. The Legislature found there was a significant problem in California with the

28  elderly abruptly losing insurance because they happened to miss a premium payment, despite

6

INDIV. AND CLASS ACTION COMPLAINT

1  having faithfully and timely paid for many years. But the Statutes were nonetheless also designed
2  to apply to all forms of life insurance.

3      22.    Sections 10113.71 and 10113.72, in addition to other statutory provisions and laws
4  in effect as of January 1, 2013, mandate that every life insurance policy governed by California
5  law shall contain a 60-day grace period and that the policy shall remain in force during the grace
6  period. Cal. Ins. Code § 10113.71(a). Pursuant to California law, as well as the terms of the policy
7  itself, a policy must have written 60-day grace period, either in the originally delivered policy or
8  through the issuance and delivery of a written endorsement or amendment. Section 10113.71
9  requires the insured provide a period of 60 days from the due date of premium within which the
10  premium payment must be made prior to the policy being terminated or lapsed for nonpayment.

11      23.    The provisions further require that, before any individual life insurance policy
12  governed by California law is lapsed or terminated for nonpayment of premium, a 30-day written
13  notice of pending lapse or termination must be mailed, not only to the policyholder, but also to
14  any additional person who has been designated to receive such notice, as well as to any person
15  having any interest in the policy. Cal. Ins. Code § 10113.72(b)(1); and *see* Cal. Ins. Code §
16  10113.72(c) (dealing with designee notification).

17      24.    The provisions also mandate that the insurer, on an annual basis, as well as during
18  any application process, notify the policy owner of his or her right to designate additional notice
19  recipients.

20      25.    Finally, the Statutes mandate that no lapse or termination is effective unless every
21  one of the applicable provisions is strictly complied with. The Statutes codified existing
22  California law on strict compliance with forfeiture provisions.

23      26.    The provisions are applicable individually and severally to all life insurance
24  policies governed by California law, including those policies originally issued or delivered
25  outside the state, but thereafter renewed or continued through payment of premium from
26  California, invoking the jurisdiction of California for purposes of regulation.

27      27.    More specifically, Section 10113.71 originally reads as follows:

28      **§ 10113.71 Grace Period; Notice of pending lapse and**

**termination of policy; Mailing requirement**

(a) Each life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period.

(b) (1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

(2) This subdivision shall not apply to nonrenewal.

(3) Notice shall be given to the policy owner and to the designee by first-class PLIC Sates mail within 30 days after a premium is due and unpaid. However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

(c) For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided.

Next, Section 10113.72 states:

**§ 10113.72 Right to designate person to receive notice of lapse or termination of policy for nonpayment of premium; Right to change designation; Notice of lapse or termination**

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do

so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class PLIC States mail within 30 days after a premium is due and unpaid.

## V.  PLIC'S VIOLATIONS OF LAW

28.    In 2012, Defendant was made fully aware of the drafting and enactment of these provisions. And through its own lobbying groups and regulatory advisors, Defendant understood how and in what fashion the Statutes would apply. Prior to enactment, Defendant made no attempt to object to the enactment of the Statutes.

29.    Despite early knowledge of the Statutes and their mandates, since January 1, 2013, Defendant has failed to fully comply with the Statutes.

30.    Plaintiff is informed and believes that PLIC has failed to provide full 60-day grace periods either in practice or in the written policy contract by amending the policy. Specifically, Defendant does not modify its policies to contractually require a full 60-day grace period and does not actually provide such grace period.

31.    PLIC has failed to mail accurate 30-day pending lapse notices to the policy owner and/or their designees.

32.    PLIC has wrongfully terminated thousands of policies despite failing to provide all the notices and protections mandated by the Statutes.

33.    PLIC will not dispute that it violated the Statutes in whole or in part. It will claim, rather, that at least for a time it did not believe that the Statutes applied to policies sold before their enactment in 2013, even if the lapse events took place *after* enactment. Or it may argue that the Statutes do not apply to certain types of policies or terminations. Regardless, in August of 2021, the California Supreme Court expressly confirmed that the Statutes apply to all policies in effect on or after Jan. 1, 2013, including PLIC's pre-2013 policies and including any form of nonpayment of premium, regardless of the cause of the nonpayment. *McHugh v. Protective Life*

*Ins. Co.* (2021) 12 Cal.5th 213, 220 ("*McHugh*").

34.     PLIC learned that the California Supreme Court in *McHugh* had confirmed that the Statutes applied to all its in-force life insurance policies, including Plaintiff's policy, but has yet to acknowledge this fact or inform its insureds that it wrongfully terminated their policies and still refuses to comply with the law after August 2021. PLIC has imposed new conditions on terminated policies, including demanding repayment of unearned premiums, as well as ignoring the consequences of noncompliance with the Statutes. Today, Plaintiff is informed and believes PLIC still does not fully comply with the grace period provisions required by the Statutes, particularly failing to properly amend and then comply with the provisions of Insurance Code Section 10113.71(a).

35.     Finally, Plaintiff is informed and believes PLIC has failed to properly train and educate its sales and underwriting staff, as well as its claims personnel and others, whose knowledge of these rules is essential for PLIC's operation. Plaintiff is informed and believes additional violations of the Statutes have also occurred, as will be disclosed during this litigation.

## VI.  PLAINTIFF'S POLICY, TERMINATION, AND DENIAL OF REINSTATEMENT

36.     Plaintiff's experience with PLIC is representative of PLIC's ongoing course of misconduct and noncompliance.

37.     In or around 1991, the late James Ringseis, Plaintiff's husband, purchased from or in California an adjustable premium life insurance policy from Principal Mutual Life Insurance Company (Policy No. 4230517). As of January 1, 2013, and at all times thereafter, Defendant was responsible for all contractual and statutory obligations associated with the Policy. Plaintiff has in her possession what appears to be a partial copy of the Policy, which is attached hereto as "Exhibit A." Defendant has in its possession a full copy of the Policy. Plaintiff is informed and believes that initially the Policy insured Mr. Ringseis until the age of 55, but later was extended to insure him for periods beyond that age, including and beyond Mr. Ringseis' date of death.

38.     The Policy was purchased in California, was issued and delivered in California, and premiums were all paid from California, such that it was and continues to be governed by the

1  laws of the state of California, including, but not limited to, the Statutes. The purpose of this

2  Policy was to protect Mr. Ringseis' wife and his children, who were named, respectively, as

3  primary and secondary beneficiaries on the Policy.

4      39.    The face amount of the Policy at the time of issuance was $286,276 or more and

5  names James Ringseis as the policy owner and insured. Plaintiff JUDITH L. RINGSEIS is

6  informed and believes she was the primary beneficiary under the Policy at the time of Mr.

7  Ringseis' death.

8      40.    The Policy states, "Except for your first premium, we will allow a grace period of

9  31 days after the premium due date to pay the premium due. If the insured dies during the grace

10  period, death proceeds will still be payable." **Exhibit "A"** at p. 19.

11      41.    Despite the application of California law, Defendant did not provide a 60-day

12  grace period within which to pay the premium or amend or endorse the Policy to contain a written

13  60-day grace period, nor did PLIC provide a 30-day notice of pending lapse prior to termination

14  of the Policy. Plaintiff is informed and believes these failures were part of PLIC's general

15  business practice of ignoring and misapplying Sections 10113.71 and 10113.72 and the express

16  language of its policies.

17      42.    Plaintiff's husband faithfully made his premium payments for more than 35 years.

18  At all times, Plaintiff and her husband were financially capable of paying all premiums due and

19  were desirous of maintaining the Policy. At no time did Plaintiff's husband intentionally or

20  directly terminate payment of premiums in amounts that he understood were sufficient to

21  maintain the Policy in force.

22      43.    Plaintiff is informed and believes that around the time the Policy terminated, Mr.

23  Ringseis had authorized premium payments to be automatically deducted from his bank account.

24      44.    Plaintiff is informed and believes that, in or around 2016, Mr. Ringseis took out a

25  loan of $10,000 from the Policy value. Defendant then diverted the automatic premium payments

26  toward payment of the loan balance which, in turn, could and did cause Defendant to record a

27  nonpayment of premium on the insurance Policy itself. However, nonpayment of premium of *any*

28  type required strict compliance with the Statutes to effectuate any lapse or termination.

Defendant, however, failed to apply or comply with the Statutes before lapsing and terminating the Policy for nonpayment of premium.

45.    At no time in or about 2019 did Plaintiff or the Policy owner receive notice that the Policy's automatic premium payments were no longer being accepted or devoted to the premium payments, had not been made, or that the Policy had purportedly lapsed and/or terminated. Neither Plaintiff nor her late husband received any notice, nor did they know that the premium payments were in arrears.

46.    The first notice Plaintiff and/or her husband had of any actual lapse and/or termination of the coverage occurred in late 2023, when the full manifestation of Plaintiff's husband's chronic medical illness resulted in a review of the family's finances. Prior to that time, neither Plaintiff nor Plaintiff's husband had been made aware of the termination of coverage.

47.    When Mr. Ringseis passed away on January 2, 2024, Plaintiff contacted Defendant to make a claim for benefits and was informed the Policy had lapsed for nonpayment in or around August of 2019 as a result of the depletion of the cash value of the Policy and a termination of the automatic premium payment agreement by Defendant. Neither Plaintiff nor her husband were aware that premium payments were no longer being taken or received by Defendant and neither Plaintiff nor her husband had been made aware of the actual termination of the coverage. Plaintiff is informed and believes that no notice of pending lapse of any kind was mailed and/or received by Plaintiff or her husband. At no time in 2019 or thereafter did Defendant comply with all of the notice provisions of the Statutes prior to asserting that the Policy's coverage had in fact lapsed.

48.    Because of Defendant's failure to send the required notices and provide the required grace period, Plaintiff and Mr. Ringseis were unaware that the Policy was in danger of lapsing. Had they been made aware, the required premium payments would have been made. Mr. Ringseis could and would have additionally taken advantage of Policy terms that would have extended coverage on Mr. Ringseis' life or of other provisions in the Policy not afforded after termination of coverage. Defendant's failure to comply with the Statutes was a direct cause of the loss of coverage and other benefits to Plaintiff.

49.    Mr. Ringseis wanted the Policy and did not intend for the Policy to lapse. When

1   Mr. Ringseis became informed that his Policy had lapsed, individuals that were authorized by Mr.

2   Ringseis to speak with Defendant inquired regarding his right to reinstate the Policy but were

3   informed that by that time he no longer had a right to reinstate.

4       50.    At no point relevant to this matter has Defendant complied with or attempted to

5   fully comply with the provisions of Sections 10113.71 or 10113.72 regarding the Policy.

6   Defendant did not send a notice of pending lapse indicating the premium amount due in order to

7   keep the Policy in force within 30 days of the due date, and 30 days prior to the lapse of the

8   Policy. Defendant did not endorse the Policy to contain a 60-day grace period, nor did Defendant

9   provide a 60-day grace period. Defendant's failure to comply with the Statutes was a direct cause

10  of the loss of coverage and the loss of policy benefits.

11      51.    PLIC's failure to comply with the Statutes prior to declaring the Policy terminated

12  left the Policy in force on the date of Mr. Ringseis' death. As such, the benefits are owed today.

13  But to date, PLIC has not paid the benefits.

## VII. CLASS ACTION ALLEGATIONS

15      52.    Plaintiff brings this action on behalf of all members of the proposed Class, as

16  follows:

17      **The Class:**

18          All owners, or beneficiaries upon a death of the insured, of
            Defendant's life insurance policies that were issued or delivered by
19          Defendant in California, and in force on or after January 1, 2013,
            and which underwent or will undergo lapse or termination for the
20          nonpayment of premium without Defendant first providing every
            notice, grace period, and offer of designation required by Insurance
21          Code Sections 10113.71 and 10113.72.

22      53.    ***Numerosity.*** The members of the Class are so numerous that their individual

23  joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the

24  proposed Class contains hundreds and perhaps thousands of members. The true number of

25  members is known or ascertainable by the Defendant, as are their identities. Thus, Class members

26  may likely be notified of the pendency of this action by first class mail, electronic mail, and/or by

27  published notice.

28      54.    ***Existence and Predominance of Common Questions and Answers of Law and***

13
INDIV. AND CLASS ACTION COMPLAINT

***Fact***. There is a well-defined community of interest in the questions and answers of law and fact involved affecting class members. The questions and answers of law and fact common to the class predominate over questions and answers affecting only individual class members, including, but not limited to, the following:

    a.     What is the proper interpretation of Sections 10113.71 and 10113.72?

    b.     Has Defendant violated any provisions of Sections 10113.71 and 10113.72?

    c.     What is the legal effect of Defendant's violations?

    d.     Whether Defendant's life insurance policies have been ineffectively lapsed or terminated.

    e.     Should Defendant be required to make restitution payments to beneficiaries of policies where the insured has died and the policy was lapsed or terminated in violation of Sections 10113.71 or 10113.72?

55.    ***Typicality.*** Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and each member of the Class were victims of the same statutory violations. Further, Plaintiff's claims are typical of the claims of his fellow Class members, which all arise from the same operative facts involving the Defendant's unlawful violations of Sections 10113.71 and 10113.72.

56.    ***Adequacy of Representation.*** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel highly experienced in handling class action litigation, including that which involves consumer protection from unfair insurance business practices, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no interest adverse or antagonistic to that of the Class.

57.    ***Superiority***. A class action is a superior method for the fair and efficient adjudication of this controversy. The injuries or financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be expended by individual litigation of their claims against Defendant. It would thus be virtually impossible for Class members, on an individual basis, to obtain effective redress for the wrongs done to them.

1    Furthermore, even if Class members could afford such individualized litigation, the court system

2    could not. Individualized litigation would create the danger of inconsistent or contradictory

3    judgments arising from the same set of facts. Individualized litigation would also increase the

4    delay and expense to all parties and the court system from the issues raised by this action. The

5    class action device provides the benefit of adjudication of these issues in a single proceeding,

6    economies of scale, and comprehensive supervision by a single court, and presents no unusual

7    management difficulties under the circumstances. Moreover, many Class members remain

8    unaware of their rights and without this Class action, would remain unaware of their rights and

9    benefits.

10        58.    In the alternative, the Class may also be certified because:

11            a.    The prosecution of separate actions by individual Class members would

12                create a risk of inconsistent or varying adjudication with respect to

13                individual Class members that would establish incompatible standards of

14                conduct for Defendant;

15            b.    The prosecution of separate actions by individual Class members would

16                create a risk of adjudications with respect to them that would, as a practical

17                matter, be dispositive of the interests of other Class members not parties to

18                the adjudications or would substantially impair or impede their ability to

19                protect their interests; and/or

20            c.    Defendant has acted or refused to act on grounds generally applicable to

21                the Class, thereby making appropriate final injunctive relief with respect to

22                the members of the Class as a whole.

23        59.    Unless the Class is certified, Defendant will retain monies received because of its

24    conduct taken against the Class members and the Plaintiff. Unless a Class-wide injunction is

25    issued, Defendant will continue to commit the violations alleged and members of the Class will

26    continue to be harmed.

27        60.    Plaintiff knows of no difficulty likely to be encountered in the management of this

28    litigation that would preclude its maintenance as a class action. Because the action is brought as a

15

INDIV. AND CLASS ACTION COMPLAINT

1  class action, the Court need only apply a single set of California laws as they relate to

2  Defendant's violation of Sections 10113.71 and 10113.72.

3          61.      Plaintiff has incurred and will incur expenses for attorney's fees and costs in

4  bringing this action. These attorney's fees and costs are necessary for the prosecution of this

5  action and will result in a benefit to each of the members of the Class.

6                          **VIII.   FIRST CAUSE OF ACTION**
                              **UNFAIR COMPETITION**
7                    **(CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*)**

8                  **(By Plaintiff, Individually, and on Behalf of the Class)**

9          62.      Plaintiff incorporates by reference each and every allegation contained

10  above.

11         63.      Plaintiff brings this claim individually and also on behalf of all members of

12  the Class, as necessary.

13         64.      California Business and Professions Code Section 17200, *et seq.*, ("UCL")

14  prohibits any unlawful, unfair, deceptive, or fraudulent business practice.

15         65.      Defendant committed "unlawful" acts under the UCL by violating Sections

16  10113.71 and 10113.72, including as to Plaintiff and the Class. Defendant failed to provide all

17  class policies with the requisite 60-day grace period and grace period provision, written 30-day

18  notices prior to any lapse or termination, and/or the mandatory annual right to designate someone

19  else to also receive notices of pending lapse or termination of coverage.

20         66.      The Policy and the Class policies were improperly terminated and they remain

21  eligible for benefits payable upon the deaths of any named insureds. PLIC's contrary repudiation

22  or termination of said policies has thus robbed Plaintiff and Class members of valuable coverage

23  and benefits to which they are entitled.

24         67.      PLIC's unlawful practices also included and continue to include Defendant's

25  ongoing concealment of the rights afforded to policy owners under Sections 10113.71 and

26  10113.72. Defendant continues to conceal and mislead the policy owners and beneficiaries of the

27  existence of a right to a 30-day lapse notice, a right to a 60-day grace period, a right to an annual

28  designation, as well as the provisions of these Statutes that mandate strict compliance before any

1  effective lapse or termination occurs.

2      68.      Moreover, PLIC has committed deceptive acts under the UCL by affirmatively and

3  erroneously telling Class members that their policies had grace periods of less than 60 days and/or

4  that their policies lapsed or terminated. The truth is that the policies had grace periods of at least

5  60 days and the policies had *not* actually lapsed or terminated.

6      69.      The unlawful and unfair business practices described above have proximately

7  caused harm and injuries to Plaintiff, the Class, and to the general public in the form of lost

8  money or property. The economic injury suffered by Plaintiff and the Class includes lost policy

9  coverage, lost policy benefits, wrongfully collected or inflated premiums, and/or diminution of

10  the value of their insurance policies.

11      70.      Pursuant to California's UCL, Plaintiff, the general public, and the members of the

12  Class are entitled at a minimum to revival of their policies which Defendant illegally terminated

13  by means of such business practices.

14      71.      Plaintiff and the members of the Class and the general public are entitled to

15  injunctive relief, including public injunctive relief.

16      72.      Plaintiff and the Class are also entitled to equitable restitution.

17      73.      Plaintiff, the public, and the members of the Class bring these equitable claims

18  under the UCL in lieu of other claims or remedies they may have at law.

19      74.      Plaintiff's success in this action will result in the enforcement of important rights

20  affecting the public interest by conferring a significant benefit upon the general public. Also,

21  private enforcement of these rights is necessary and the interests Plaintiff seeks to protect are for

22  the benefit of the general public. Plaintiff is therefore entitled to an award of attorneys' fees and

23  costs of suit pursuant to, among other things, the Public Benefit Doctrine, and California Code of

24  Civil Procedure Section 1021.5.

25                          **IX.  <u>PRAYER FOR RELIEF</u>**

26      Plaintiff, individually, and on behalf of the Class, prays for relief against Defendants as

27  follows:

28      1.      For certification of this action as a class action;

---

17

**INDIV. AND CLASS ACTION COMPLAINT**

EXHIBIT A

1    2.    For injunctive relief, including public injunctive relief, remedying

2   Defendant's violations of the Statutes;

3    3.    For restitution or other equitable relief, where available;

4    4.    For attorneys' fees and all litigation costs and expenses, where available; and

5    5.    For such other and further relief as this Court deems just and proper.

6   DATED: April 21, 2025                    **WINTERS & ASSOCIATES**

7                                    By:    /s/*Jack B. Winters, Jr.*

8                                    Jack B. Winters, Jr., Esq.
                                     Sarah Ball, Esq.

9                                    jwinters@singletonschreiber.com
                                     sball@einsurelaw.com

10

11                                   **NICHOLAS & TOMASEVIC, LLP**
                                     Craig M. Nicholas (SBN 178444)

12                                   Alex Tomasevic (SBN 245598)
                                     Jake W. Schulte (SBN 293777)

13                                   Email: cnicholas@nicholaslaw.org
                                     Email: atomasevic@nicholaslaw.org

14                                   Email: jschulte@nicholaslaw.org

15                                   **SINGLETON SCHREIBER, LLP**
                                     CHRISTOPHER R. RODRIGUEZ,

16                                   SB #212274
                                     ANDREW D. BLUTH, SB #232387

17                                   MICHELLE M. MEYERS, SB #236387
                                     TRENT J. NELSON, SB #340185

18                                   E-Mail: crodriguez@singletonschreiber.com
                                     E-Mail: abluth@singletonschreiber.com

19                                   E-Mail: mmeyers@singletonschreiber.com
                                     E-Mail: tnelson@singletonschreiber.com

20

21                                   Attorneys for Plaintiff JUDITH L.
                                     RINGSEIS, Individually, and on Behalf of

22                                   the Class

23

24

25

26

27

28

**EXHIBIT "A"**

We will pay the death proceeds to the beneficiary, subject to the provisions of your policy, when we receive proof at our home office of the insured's death.

The owner and the beneficiary are as named in the application unless changed as provided in your policy. This policy is a legal contract between you, as the owner, and us, Principal Mutual Life Insurance Company. Your policy is issued in consideration of the application and payment of premiums.

Signed for Principal Mutual Life Insurance Company at Des Moines, Iowa, on the policy date.

*T. M. Hutchison*

SENIOR VICE-PRESIDENT, GENERAL
COUNSEL AND SECRETARY

*G. David Hurd*

PRESIDENT AND CHIEF EXECUTIVE OFFICER

**10-DAY EXAMINATION OFFER.** It is important to us that you are satisfied with this policy. If you are not satisfied, you may return your policy to either the agent or our home office within ten days of its receipt. We will refund any premium paid and your policy will be considered void from its inception. Please read your policy carefully so you may better use its many benefits.

**ADJUSTABLE LIFE POLICY.** Benefits payable at death during the Guaranteed Protection Period with level premiums payable to age stated on the Data Page. Adjustable face amount, premium, Guaranteed Protection Period and Premium Payment Period. Participating.

A mutual company serving policyowners and beneficiaries since 1879.


**thePrincipal**
*Financial Group*

**Principal Mutual Life Insurance Company**

711 High Street
Des Moines, Iowa 50392-0001

| | |
|---|---|
| INSURED   James L Ringseis | ISSUE AGE-SEX   45-Male |
| POLICY NUMBER   4230517 | POLICY   Adjustable Life |
| POLICY DATE   November 23, 1991 | FACE AMOUNT   $286,286 |

SF 68

*PResent - 197 monthly*
*INSURANCE = $325,000*

# INDEX

PAGE | | PAGE

Adjustment Options..............5
Age and Sex (of Insured)........17
Alteration (of Contract)........16
Assignment......................16
Automatic Premium Loan..........10
Beneficiary.....................16
Benefit Instructions............16
Benefit Options.................10
Change of Owner or Beneficiary..16
Contract........................16
Data Page.......................3
Death Values....................4
Dividend Options................8
Face Amount.....................3
Grace Period....................17
Incontestability................16
Insured.........................4

Lapse or Surrender
Options (Nonforfeiture).........15
Living Values...................5
Loans...........................9
Net Cash Value..................5
(Nonforfeiture) Lapse or
Surrender Options...............15
Ownership.......................16
Paid-Up Term Insurance..........15
Partial Surrender...............8
Policy Years....................4
Premiums........................17
Reinstatement...................18
Suicide.........................17
Table of Values.................3
Termination.....................17
Unscheduled Premium.............7

A copy of the application and any additional benefits provided
by rider follow the last page of this policy.

**thePrincipal**   Principal Mutual
Life Insurance Company
711 High Street
Des Moines, Iowa 50309   DATA PAGE                    PAGE 3

INSURED   James L Ringseis               ISSUE AGE-SEX   45-Male

POLICY NUMBER   4230517                  POLICY      Adjustable Life

POLICY DATE     November 23, 1991

| FORM NO. | POLICY AND RIDERS | FACE AMOUNT | GUARANTEED PROTECTION PERIOD*1 | ANNUAL AMOUNT | PREMIUM PAYABLE |
|---|---|---|---|---|---|
| SF 68 | Adjustable Life | $286,286 | To age 55 | $1,892.69 | To age 55 |
| SF157 | Cost of Living | | To age 55 | | |
| | | | TOTAL | $1,892.69 | |

Monthly Premium on Pre-Authorized Withdrawal Plan        $165.61

POLICY LIMITATIONS

| | |
|---|---|
| Minimum Face Amount | $25,000 |
| Minimum Face Amount Increase | 10,000 |
| Minimum Unscheduled Premium | 500 |
| Minimum Partial Surrender Amount | 500 |
| Partial Surrender Transaction Charge | 25 |
| Minimum Annual Premium After Adjustment | 300 |

*1  Your Guaranteed Protection Period is to age 55 with premiums payable
    to age 55.  This Guaranteed Protection Period can be lengthened through
    use of the options described in Your Adjustment Options and Your
    Dividend Options sections of your policy.

See the next page for detailed schedule of protection and premium classes.

SF 68                     (Continued on Page 3-1)

EXHIBIT A
33

EX. A
004

DATA PAGE                                    PAGE 3-1

INSURED   James L Ringseis                 ISSUE AGE-SEX   45-Male

POLICY NUMBER   4230517                    POLICY       Adjustable Life

POLICY DATE       November 23, 1991

### DETAILED SCHEDULE OF PROTECTION AND PREMIUM CLASSES

| POLICY AND RIDERS | AMOUNT | PREMIUM CLASS |
|---|---|---|
| Adjustable Life | $286,286*2 | Standard Nonsmoker |
| Cost of Living | Current maximum increase is $50,000 | |

*2  Cost of Living increases apply.

(Continued on Page 3-2)

EXHIBIT A
34                                      EX. A
005

**the**Principal    Principal Mutual
Life Insurance Company

711 High Street
Des Moines, Iowa 50309    TABLE OF VALUES                    PAGE 3-2

INSURED   James L Ringseis                ISSUE AGE-SEX  45-Male

POLICY NUMBER  4230517                    POLICY        Adjustable Life

POLICY DATE    November 23, 1991

The face amount payable at death during each policy year is $286,286.

| END OF POLICY YEAR | POLICY ANNIVERSARY | GUARANTEED CASH VALUE | PAID-UP TERM INSURANCE FOR CURRENT FACE AMOUNT | |
|---|---|---|---|---|
| | | | YEARS | DAYS |
| 1 | 1992 | 0.00 | 0 | 0 |
| 2 | 1993 | 429.13 | 0 | 139 |
| 3 | 1994 | 789.18 | 0 | 236 |
| 4 | 1995 | 1,068.52 | 0 | 295 |
| 5 | 1996 | 1,254.90 | 0 | 319 |
| 6 | 1997 | 1,329.63 | 0 | 309 |
| 7 | 1998 | 1,270.05 | 0 | 269 |
| 8 | 1999 | 1,049.34 | 0 | 202 |
| 9 | 2000 | 636.18 | 0 | 111 |
| 10 | 2001 | 0.20 | 0 | 1 |

The guaranteed cash value at age 55 will be $0.20 which will
provide protection of $286,286 from that policy anniversary through
Nov 24, 2001.

Values and net single premiums are based on the Commissioners 1980
Standard Ordinary Nonsmoker Mortality Table.  Continuous functions are
used, with ages on a last birthday basis and interest at 4% a year.  We
have filed a detailed statement of our method of computation with your
state's insurance division or department.  Cash values are equal to the
reserve by the Commissioners Reserve Valuation Method or, if greater, the
minimum cash value according to the Standard Nonforfeiture Law.  Values
for all years not shown in the table can be calculated by the Fackler
Reserve Accumulation Formula based upon the same net renewal premium.

The cash value of any paid-up insurance is the net single premium for such
insurance at the attained age of the insured.

SF 68

## DEFINITIONS IN THIS POLICY

**YOU, YOUR**

Means the owner of this policy.

**WE, OUR, US**

Means Principal Mutual Life Insurance Company.

**THE INSURED**

Means the individual named as the insured on the face of this policy. The insured may or may not be the owner.

**POLICY YEARS AND ANNIVERSARIES**

Means the policy years and anniversaries computed from the policy date.

> **EXAMPLE:** If the policy date is June 5, 1997, the first policy year ends on June 4, 1998, and the first policy anniversary falls on June 5, 1998.

**AGE**

Means the policy anniversary following the birthday on which the insured attains the age stated.

**GUARANTEED PROTECTION PERIOD**

Means the period for which you are protected based upon the premiums you pay and the face amount you have chosen. Your Guaranteed Protection Period is stated on the current Data Page.

You may change the Guaranteed Protection Period by using the options described in Your Adjustment Options and Your Dividend Options. If you do not pay the premiums, the Guaranteed Protection Period stated on the current Data Page no longer applies. Instead, protection will end unless Your Options on Lapse or Surrender apply.

**PREMIUM PAYMENT PERIOD**

Means the age to which premiums are payable as stated on your current Data Page.

## YOUR POLICY VALUES

**DEATH VALUES**

The purpose of your policy is to provide a death benefit. The amount we will pay to the beneficiary, called the death proceeds, is the total of:

1. The face amount of this policy;

PLUS

2. Any proceeds from any benefit rider on the insured's life;

PLUS

3. The value of any dividends left at interest;

PLUS

4. Any dividend credited at death;

PLUS

5. Any premium (except unscheduled premiums) paid beyond death;

LESS

6. Any pro rata premium due;

SF    68                                    4                                    4230517

LESS

    7.    Any policy loans and unpaid loan interest.

We will pay interest on lump sum death proceeds from the insured's death until the date of payment. The rate will be the same as the rate used for Benefit Option B, but it will never be less than 3% a year.

**LIVING VALUES**

Your policy may have certain values which consist of the guaranteed cash value plus any dividend values which are credited to your policy.

The guaranteed cash value, as of the date to which all premiums due have been paid, is the amount shown for that date on the Table of Values page. This amount may be increased under Policy Improvement, Plan Enhancement or Additional Insurance dividend options.

The net cash value is the total of:

    1.    The guaranteed cash value;

PLUS

    2.    The value of any dividends left at interest;

LESS

    3.    Any policy loans and unpaid loan interest.

This net cash value is available:

    1.    To provide systematic income (see Your Benefit Options).

    2.    To use as collateral for a loan or as the basis for a policy loan (see Your Policy Loan Values).

    3.    To continue some insurance protection if you cannot or do not wish to continue paying premiums (see Your Options on Lapse or Surrender).

    4.    To obtain cash by total or partial surrender of your policy (see Partial Surrender and Your Options on Lapse or Surrender).

## YOUR ADJUSTMENT OPTIONS

While your policy is in force with no premiums in default, you may request a change in the Guaranteed Protection Period or Premium Payment Period. The following adjustments may be requested:

    1.    Increasing or decreasing the face amount;

    2.    Increasing or decreasing the annual premium;

    3.    Paying an unscheduled premium; and

    4.    Making a partial surrender.

**EFFECT OF AN ADJUSTMENT**

Your Guaranteed Protection Period and Premium Payment Period are shown on the current Data Page. The following table shows how a single adjustment will affect your Guaranteed Protection Period and/or Premium Payment Period.

| EFFECT OF AN ADJUSTMENT... | ...when the Guaranteed Protection Period is Lifetime | ...when the Guaranteed Protection Period is not Lifetime. |
|---|---|---|
| If you increase your policy's face amount with no change in the annual premium... | ...either your Premium Payment Period will be lengthened or your Guaranteed Protection Period will be shortened. | ...your Guaranteed Protection Period will be shortened. |
| If you decrease your policy's face amount with no change in the annual premium... | ...your Premium Payment Period will be shortened. | ...your Guaranteed Protection Period will be lengthened. |
| If you increase your annual premium with no change in the face amount... | ...your Premium Payment Period will be shortened. | ...your Guaranteed Protection Period will be lengthened. |
| If you decrease your annual premium with no change in the face amount... | ...either your Premium Payment Period will be lengthened or your Guaranteed Protection Period will be shortened. | ...your Guaranteed Protection Period will be shortened. |
| If you pay an unscheduled premium with no change in the annual premium or face amount... | ...your Premium Payment Period will be shortened. | ...your Guaranteed Protection Period will be lengthened. |
| If you make a partial surrender with no change in the annual premium, the face amount will decrease and... | ...either your Premium Payment Period will be lengthened or your Guaranteed Protection Period will be shortened. | ...your Guaranteed Protection Period will be shortened. |

EXHIBIT A
38

EX. A
009

**APPROVAL OF AN ADJUSTMENT**

We will approve a requested adjustment to increase your face amount, in a premium class we determine, if:

1. The attained age of the insured is 75 or less and the amount of the increase is at least the Minimum Face Amount Increase shown on the current Data Page; and

2. You supply evidence which satisfies us that the insured is insurable under our underwriting rules then in effect.

We will not approve an adjustment if:

1. The face amount after adjustment would be less than the Minimum Face Amount shown on the current Data Page;

2. The annual premium after adjustment would be less than the Minimum Annual Premium After Adjustment shown on the current Data Page;

3. Your policy premiums are being waived under any rider;

4. The Guaranteed Protection Period after adjustment would be less than 5 years from the adjustment date, or before the insured's attained age 40; or

5. The Premium Payment Period after adjustment would be less than 5 years from the policy effective date, unless the policy is paid up by an unscheduled premium.

**REQUESTING AN ADJUSTMENT**

Your request for an adjustment must be in writing and in a form specified by us. A request for a face amount increase must be signed by the insured. Except for partial surrenders, an adjustment is effective on the adjustment date, subject to our prior approval and payment of its premium.

The effective date of a partial surrender will be the date that the surrender is approved if the partial surrender is approved on the day of the month which corresponds to your policy date. If the partial surrender is approved on a different date, the effective date will be the day of the month prior to our approval which corresponds to the policy date.

**ADJUSTMENT DATE**

The adjustment date will be the day of the month next following our approval of a requested adjustment which corresponds to your policy date.

> EXAMPLE: If the policy date is June 5, 1997, and if your requested adjustment is approved on April 20, 1998, the adjustment date will be May 5, 1998.

**DATA AND TABLE OF VALUES PAGES**

Any adjustment changes the information on your most recent Data and Table of Values pages. We may ask you to send us this policy so we can replace the Data and Table of Value pages with new ones reflecting the adjustments.

**UNSCHEDULED PREMIUMS**

You may enhance your policy by paying an unscheduled premium. Such premium is voluntary and in addition to any regular premium due.

The maximum unscheduled premium is the amount needed to provide paid-up lifetime protection for your policy's then current face amount. The minimum unscheduled premium is shown on the current Data Page.

**PARTIAL SURRENDER**

You may make a partial surrender of your guaranteed cash value subject to the provisions of this policy. Your policy's current guaranteed cash value will reduce by the amount of the partial surrender plus the amount of the transaction charge. Unless you provide evidence of insurability, your policy's face amount will reduce by an amount equal to the reduction in guaranteed cash value.

A partial surrender is subject to these additional conditions:

1.   The minimum partial surrender amount is shown on the current Data Page.

2.   No more than two partial surrenders may be made in any policy year.

3.   A partial surrender may not exceed your policy's guaranteed cash value less the transaction charge.

4.   If you have a policy loan, any partial surrender in excess of the net cash value less the transaction charge will be used to repay the policy loan.

5.   Your policy must be in force with no premium in default.

## YOUR DIVIDEND OPTIONS

Your policy shares in our divisible surplus. We determine your share and credit it as a dividend at the end of each policy year. Dividends reflect our mortality, expense, and investment experience and may be affected by your policy loans.

You may choose to use your dividends in any of these ways:

1.   PREMIUM PAYMENT--To pay part or all of the premium currently due, unless the premium is paid by pre-authorized withdrawal.

2.   POLICY IMPROVEMENT--To extend your Guaranteed Protection Period or Premium Payment Period if it is less than lifetime. If your Guaranteed Protection Period becomes lifetime, your face amount will increase. Any dividends applied under this option will increase the guaranteed cash value shown on your current Data Page and Table of Values page.

3.   ADDITIONAL INSURANCE--To increase the policy face amount. If your Guaranteed Protection Period is not lifetime, this option will also extend the Guaranteed Protection and Premium Payment Periods. Any dividends applied under this option will increase the guaranteed cash value shown on your current Data Page and Table of Values page.

4.   PLAN ENHANCEMENT--To shorten the Premium Payment Period if your Guaranteed Protection Period is lifetime, or to extend the Guaranteed Protection and Premium Payment Periods if your Guaranteed Protection Period is not lifetime. Any dividends applied under this option will increase the guaranteed cash value shown on your current Data Page and Table of Values page.

EXHIBIT A
40

EX. A
011

5.   LEFT AT INTEREST--To be left on deposit with us to earn interest at a rate we determine but never less than 3% a year.

6.   CASH--To be paid in cash to you.

You may change your dividend option in writing before or within 31 days after a dividend is credited. If no choice is made, Option 2 will be used.

**DIVIDEND SURRENDER**   You may obtain the value of any dividends left at interest by submitting a written request for surrender at any time, unless:

1.   The dividends have been applied under one of your policy's options on lapse or surrender; or

2.   They are required as security for a policy loan.

## YOUR POLICY LOAN VALUES

You may obtain a policy loan from us. This policy will be the only security required for your loan. The maximum loan value is the net cash value as defined under Living Values less an amount required to keep the loan from exceeding the guaranteed cash value through the next policy anniversary. Dividends credited may be affected by policy loans. See Your Dividend Options section.

No policy loan is available if this policy is in force as paid-up term insurance.

**LOAN INTEREST**   Interest accrues daily at the annual interest rate established by us for policy loans. Interest is due and payable at the end of the policy year. If you do not pay loan interest when due, it will be added to the loan principal and bear interest at the rate then in effect.

We may change the interest rate once a year on the policy anniversary. Any change in the interest rate will apply to any existing or new policy loans. The maximum annual interest rate we may establish will not exceed the higher of:

1.   The Published Monthly Average (Moody's Corporate Bond Yield Average - Monthly Average Corporates as published by Moody's Investors Service, Inc., or its successor) for the calendar month ending two months prior to the date the rate is determined; or

2.   The rate used to compute your guaranteed cash value (as shown in your Table of Values) plus 1%.

The Insurance Commissioner of the state in which this policy's application is dated will substitute a similar average if the Published Monthly Average is no longer published.

We will make no change in your policy's loan interest rate which is less than 1/2%. We will notify you of:

1.   The loan interest rate at the time the loan is made, or, if it is a premium loan, as soon as reasonably possible after the loan is made; or

2. Any loan interest rate change on existing loans. The change will be effective on your policy anniversary. Notice will be given in advance of the change.

**REPAYMENT**

You may repay all or part of a policy loan at any time so long as:

1. The insured is alive; and

2. You have not surrendered your policy for its net cash value.

Any loans and loan interest not repaid at the insured's death are deducted from death proceeds.

**DEFERMENT**

As required by law, we have the right to postpone a policy loan for up to 6 months after we receive the written loan request unless the loan is to be used to pay a premium.

**TERMINATION**

Whenever your loan amount, with interest, is more than your policy's guaranteed cash value plus values added by dividends, your policy terminates. We will mail notice to your last known address at least 31 days before such termination.

**AUTOMATIC PREMIUM LOAN**

We will pay a premium which remains unpaid at the end of a grace period with an automatic premium loan if:

1. You request this arrangement in the application or in writing while no premium is in default; and

2. Your policy has sufficient loan value to pay the premium plus the loan interest until the next premium due date.

If the loan value is not sufficient for an automatic premium loan, the lapse or surrender options will apply. You may revoke your request for an automatic premium loan at any time.

Premiums payable on a pre-authorized withdrawal basis will not be paid by automatic premium loans.

## YOUR BENEFIT OPTIONS

You may elect to use one of these benefit options in your benefit instructions. If no benefit instructions are in effect at the insured's death, the beneficiary may apply unpaid death proceeds under a benefit option.

You may also apply the net cash value of your policy under a benefit option.

If a benefit option is elected, this policy must be exchanged for a supplementary contract effective when the policy proceeds first become payable.

Option A. SPECIAL BENEFIT ARRANGEMENT--A specially designed benefit option may be arranged with our approval.

Option B. PROCEEDS LEFT AT INTEREST--We will hold the amount applied on deposit. Interest payments will be made annually, semi-annually, quarterly or monthly, as elected.

EXHIBIT A
42

EX. A
013

Option C. FIXED INCOME--We will pay an income of a fixed amount or an income for a fixed period not exceeding 30 years. Refer to the Option C tables to determine the number of fixed amount payments or the amount of each fixed period payment. On request, we will furnish benefit information not shown in the tables.

Option D. LIFE INCOME--We will pay an income during a person's lifetime. A minimum guaranteed period may be used, as shown in the Option D table. Payments will be in an amount we determine, but not less than shown in the table.

Option E. JOINT AND SURVIVOR LIFE INCOME--We will pay an income during the lifetime of two persons, and continuing until the death of the survivor. This option includes a minimum guaranteed period of 10 years. Payments will be in an amount we determine, but not less than shown in the Option E table. On request, we will furnish minimum income information for age combinations not shown in the table.

Option F. JOINT AND TWO-THIRDS SURVIVOR LIFE INCOME--We will pay an income during the time two persons both remain alive, and two-thirds of the original amount during the remaining lifetime of the survivor. Payments during the time both people are alive will be in an amount we determine (the "original amount"), but not less than shown in the Option F table. On request, we will furnish minimum income information for age combinations not shown in the table.

## OPTION C TABLES

Minimum Number of Months for Which Monthly Income will be Paid. First Payment on Effective Date of Supplementary Contract.

| Amount Applied | Income | No. of Pymts* | Income | No. of Pymts* | Income | No. of Pymts* |
|---|---|---|---|---|---|---|
| $ 10,000 | $ 50 | 274 | $ 100 | 114 | $ 175 | 61 |
| 25,000 | 150 | 214 | 250 | 114 | 400 | 67 |
| 50,000 | 250 | 274 | 500 | 114 | 750 | 72 |
| 100,000 | 450 | 321 | 1,000 | 114 | 1,500 | 72 |

*Minimum number of months for which full monthly income will be paid. There may be part of a payment made one month after the last one. This partial payment will be the balance, if any, of the amount applied less the payments, all accumulated at interest.

Minimum Monthly Income To Be Paid for Number Of Years. First Payment on Effective Date of Supplementary Contract.

| Amount Applied | Number of Years | | | | | |
|---|---|---|---|---|---|---|
| | 5 | 10 | 15 | 20 | 25 | 30 |
| $ 10,000 | 179.10 | 96.10 | 68.70 | 55.10 | 47.10 | 41.80 |
| 25,000 | 447.75 | 240.25 | 171.75 | 137.75 | 117.75 | 104.50 |
| 50,000 | 895.50 | 480.50 | 343.50 | 275.50 | 235.50 | 209.00 |
| 100,000 | 1,791.00 | 961.00 | 687.00 | 551.00 | 471.00 | 418.00 |

EXHIBIT A
43

EX. A
014

## OPTION D TABLE

Minimum Monthly Life Income for Each $1,000 Applied. First Payment on Effective Date of Supplementary Contract.

| Age Last Birthday Male Payee | Minimum Guaranteed Period | | | | | |
|---|---|---|---|---|---|---|
| | None | 5 Yrs. | 10 Yrs. | 15 Yrs. | 20 Yrs. | Inst.* Rfd. |
| 55 | 4.45 | 4.44 | 4.40 | 4.33 | 4.23 | 4.24 |
| 56 | 4.54 | 4.53 | 4.48 | 4.41 | 4.29 | 4.31 |
| 57 | 4.64 | 4.62 | 4.57 | 4.48 | 4.35 | 4.38 |
| 58 | 4.74 | 4.72 | 4.66 | 4.56 | 4.42 | 4.46 |
| 59 | 4.84 | 4.82 | 4.76 | 4.65 | 4.48 | 4.54 |
| 60 | 4.96 | 4.94 | 4.87 | 4.74 | 4.55 | 4.63 |
| 61 | 5.08 | 5.06 | 4.97 | 4.83 | 4.61 | 4.72 |
| 62 | 5.21 | 5.18 | 5.09 | 4.92 | 4.68 | 4.82 |
| 63 | 5.35 | 5.32 | 5.21 | 5.01 | 4.75 | 4.92 |
| 64 | 5.50 | 5.46 | 5.33 | 5.11 | 4.81 | 5.02 |
| 65 | 5.66 | 5.62 | 5.47 | 5.21 | 4.87 | 5.13 |
| 66 | 5.83 | 5.78 | 5.60 | 5.31 | 4.94 | 5.25 |
| 67 | 6.01 | 5.95 | 5.75 | 5.41 | 4.99 | 5.37 |
| 68 | 6.21 | 6.13 | 5.89 | 5.52 | 5.05 | 5.50 |
| 69 | 6.42 | 6.33 | 6.05 | 5.62 | 5.11 | 5.64 |
| 70 | 6.64 | 6.53 | 6.21 | 5.72 | 5.16 | 5.78 |
| 71 | 6.87 | 6.74 | 6.37 | 5.82 | 5.20 | 5.93 |
| 72 | 7.12 | 6.97 | 6.54 | 5.91 | 5.25 | 6.09 |
| 73 | 7.39 | 7.21 | 6.71 | 6.01 | 5.29 | 6.25 |
| 74 | 7.67 | 7.46 | 6.88 | 6.10 | 5.32 | 6.42 |
| 75 | 7.98 | 7.73 | 7.05 | 6.18 | 5.35 | 6.60 |

*Income payments continue until the total received equals the amount applied under the option.

Minimum Monthly Life Income for Each $1,000 Applied. First Payment on Effective Date of Supplementary Contract.

| Age Last Birthday Female Payee | Minimum Guaranteed Period | | | | | |
|---|---|---|---|---|---|---|
| | None | 5 Yrs. | 10 Yrs. | 15 Yrs. | 20 Yrs. | Inst.* Rfd. |
| 55 | 4.05 | 4.05 | 4.03 | 4.00 | 3.95 | 3.94 |
| 56 | 4.12 | 4.12 | 4.10 | 4.06 | 4.01 | 4.00 |
| 57 | 4.20 | 4.19 | 4.17 | 4.13 | 4.07 | 4.06 |
| 58 | 4.28 | 4.27 | 4.25 | 4.20 | 4.13 | 4.13 |
| 59 | 4.36 | 4.35 | 4.33 | 4.28 | 4.20 | 4.20 |
| 60 | 4.45 | 4.44 | 4.41 | 4.35 | 4.26 | 4.27 |
| 61 | 4.55 | 4.54 | 4.50 | 4.43 | 4.33 | 4.35 |
| 62 | 4.65 | 4.64 | 4.60 | 4.52 | 4.40 | 4.43 |
| 63 | 4.76 | 4.74 | 4.70 | 4.61 | 4.47 | 4.52 |
| 64 | 4.87 | 4.86 | 4.80 | 4.70 | 4.54 | 4.61 |
| 65 | 5.00 | 4.98 | 4.91 | 4.80 | 4.61 | 4.70 |
| 66 | 5.13 | 5.11 | 5.03 | 4.89 | 4.69 | 4.81 |
| 67 | 5.27 | 5.24 | 5.16 | 5.00 | 4.76 | 4.91 |
| 68 | 5.42 | 5.39 | 5.29 | 5.10 | 4.83 | 5.02 |
| 69 | 5.58 | 5.55 | 5.43 | 5.21 | 4.90 | 5.14 |
| 70 | 5.76 | 5.71 | 5.57 | 5.32 | 4.97 | 5.27 |
| 71 | 5.94 | 5.89 | 5.73 | 5.43 | 5.03 | 5.40 |
| 72 | 6.15 | 6.09 | 5.89 | 5.55 | 5.09 | 5.54 |
| 73 | 6.37 | 6.30 | 6.06 | 5.66 | 5.15 | 5.69 |
| 74 | 6.60 | 6.52 | 6.24 | 5.77 | 5.20 | 5.85 |
| 75 | 6.86 | 6.75 | 6.42 | 5.88 | 5.25 | 6.02 |

*Income payments continue until the total received equals the amount applied under the option.

## OPTION E TABLE

Minimum Monthly Joint and Survivor Life Income For Each $1,000 Applied. First Payment on Effective Date of Supplementary Contract.

| Age Last Birthday of Male Payee | Age Last Birthday of Female Payee | | | | |
|---|---|---|---|---|---|
| | 55 | 60 | 62 | 65 | 70 |
| 60 | 3.82 | 4.04 | 4.12 | 4.25 | 4.45 |
| 62 | 3.85 | 4.09 | 4.19 | 4.33 | 4.57 |
| 65 | 3.90 | 4.16 | 4.28 | 4.45 | 4.74 |
| 70 | 3.95 | 4.26 | 4.40 | 4.62 | 5.01 |
| 75 | 3.99 | 4.33 | 4.48 | 4.75 | ·5.24 |

## OPTION F TABLE

Minimum Monthly Joint and Two-Thirds Survivor Life Income for Each $1,000 Applied. First Payment on Effective Date of Supplementary Contract.

| Age Last Birthday of Male Payee | Age Last Birthday of Female Payee | | | | |
|---|---|---|---|---|---|
| | 55 | 60 | 62 | 65 | 70 |
| 60 | 4.22 | 4.45 | 4.55 | 4.71 | 5.00 |
| 62 | 4.30 | 4.54 | 4.65 | 4.82 | 5.14 |
| 65 | 4.41 | 4.68 | 4.80 | 4.99 | 5.35 |
| 70 | 4.61 | 4.92 | 5.06 | 5.29 | 5.74 |
| 75 | 4.82 | 5.17 | 5.33 | 5.60 | 6.14 |

**BENEFIT OPTION INTEREST**

Interest at a rate we set, but never less than 3% a year, will be applied to determine the payments under Option B, and any such interest in excess of 3% will be added to payments under Option C.

**CONDITIONS**

When a benefit option is elected the following conditions will apply:

1. Any amount payable to an assignee will be paid in one lump sum.

2. The amount applied must be at least $2,000 and result in periodic payments of at least $20.

3. Benefit options are restricted if the recipient of benefits is not a natural person.

4. One of the persons on whose life payments under Options D, E and F are based must be the owner, insured or beneficiary. The size of payments depends on the age and sex of the person or persons on whose life payments are based, determined as of the effective date of the supplementary contract. We reserve the right to require evidence of age, sex and continuing survival.

EXHIBIT A
46

EX. A
017

# YOUR OPTIONS ON LAPSE OR SURRENDER

## (NONFORFEITURE PROVISIONS)

**LAPSE OR SURRENDER**

The Table of Values located on the current Data Page of this policy shows your policy's guaranteed values, if any, on lapse or surrender. The table assumes premiums are paid to the end of the policy year shown and does not take into account dividends, (except those applied under dividend options 2, 3 and 4 on or prior to the effective date of the table), loans or unpaid loan interest. The actual amount which may be applied under a lapse or surrender option will be the net cash value as described under Living Values.

All values shown in the Table of Values are greater than or equal to those required by any applicable state law. We will determine the cash value at any time within a policy year, with allowance for time elapsed in such year and for the period premiums have been paid.

**YOUR OPTIONS**

1.  CASH--We will pay the net cash value in one lump sum or apply part or all of it under a benefit option.

2.  PAID-UP TERM INSURANCE--You may continue your policy for a limited period of time with no further premiums due. The limited protection period begins on the date to which premiums are paid. The amount of this paid-up term insurance, unless an adjustment is made as provided below, will be the total of:

    The face amount of this policy;

    LESS

    Any policy loans and unpaid loan interest.

    The net cash value is applied as a net single premium at the insured's attained age to determine the length of the limited protection period. If this limited protection period is for lifetime and there are dividends left at interest in excess of the amount needed to make this change, the excess will be left at interest on the paid-up policy.

    When this option takes effect you may reduce the paid-up term insurance amount so that your policy provides limited protection for a longer period of your choice, without regard to any limitations which would otherwise apply to adjustments.

**CONDITIONS**

If you wish to elect a lapse or surrender option, you may do so within 3 months following the date to which premiums are paid. If you have made no election we will apply the available value under Option 2.

If you continue your policy under Option 2, it may be surrendered at a later time for its then net cash value. Insurance provided under Option 2 provides a basic death benefit but no extra benefits such as accidental death benefits, guaranteed increase rights, or cost of living increases, even if included with your original policy.

**DEFERMENT**

As required by law, we have the right to postpone paying the net cash value for up to 6 months after we receive the written surrender request.

## OWNER, BENEFICIARY, ASSIGNMENT

**OWNERSHIP**

The owner is as named in the application unless you change ownership as provided. As owner, you may exercise every right and enjoy every privilege provided by your policy, subject to the rights of any irrevocable beneficiary. These rights and privileges end at the insured's death.

If you are not the insured and die before the insured, the insured becomes the owner unless you have provided for a successor owner.

**BENEFICIARY**

The beneficiary named in the application will receive the death proceeds unless you change the beneficiary designation as provided. Any death proceeds payable to a beneficiary who dies before the insured will be paid equally to surviving beneficiaries, unless we have approved another written procedure requested by you. If no beneficiary survives the insured, death proceeds will be paid to the owner or to the owner's estate.

**BENEFIT INSTRUCTIONS**

While the insured is alive, you may file instructions for the payment of death proceeds under one of the benefit options described. Such instructions, or a change of instructions, must be in written form approved by us. If you change the beneficiary, it will revoke any prior benefit instructions.

**CHANGE OF OWNER OR BENEFICIARY**

You may change the owner and beneficiary of this policy. Your request must be in writing. Our approval is needed and no change is effective until we approve it. Once approved, the change is effective as of the date you signed it. We have the right to require that you send us this policy so we can record the change.

**ASSIGNMENT**

You may assign your policy as collateral for a loan. The assignment must be in writing and filed in our home office. We assume no responsibility for any assignment's validity. An assignment as collateral does not change the owner but the rights of beneficiaries, whenever named, become subordinate to those of the assignee.

## GENERAL INFORMATION

**THE CONTRACT**

This policy, the attached application, any amendments to the application, any adjustment applications, and the current Data and Table of Values pages, make up the entire contract. Any statements made in the application, an adjustment application, or any amendments to the application will be considered representations and not warranties. No statement, unless made in an application or amendment thereto, will be used to void your policy (or void an adjustment in case of an adjustment application) or to defend against a claim. Unless a separate effective date is shown on the Data Page, the policy date is also the effective date.

**ALTERATIONS**

This policy may be altered by mutual agreement, but any alterations must be in writing and signed by one of our corporate officers. No one else, including the agent, may change the contract or waive any provisions.

**INCONTESTABILITY**

Your policy has a 2 year contestable period. We will not claim your policy is void or deny payment of any proceeds after the policy has been in force during the insured's lifetime for 2 years from the effective date, except for:

1. Nonpayment of premiums; or

2.     Any claim for total disability or accidental death benefits your policy may provide.

Any face amount increase made under Your Adjustment Options has its own 2 year contestable period which begins on the adjustment date.

**AGE AND SEX**

If the issue age or sex of the insured has been misstated, we will adjust any benefits payable under your policy. The age shown should be the age on the birthday on or prior to the policy date. Any adjustment will be based on the amount of insurance the premium would have purchased at the correct issue age and sex.

**SUICIDE**

This policy's death proceeds will not be paid if the insured dies by suicide, while sane or insane, within 2 years of the effective date. Instead we will return all premiums paid, less any dividends paid and any policy loans and unpaid loan interest. This amount will be paid to the beneficiary.

Any face amount increase made under Your Adjustment Options will not be paid if the insured dies by suicide, while sane or insane, within 2 years of the adjustment date. Instead, we will return all premiums paid for the increased amount of protection, less any dividends paid and any policy loans and loan interest attributable to the face amount increase. This amount will be paid to the beneficiary.

**PAYMENT OF PREMIUMS**

Your policy is effective and the first premium is due on the policy date. Future premium due dates are determined by the frequency you selected in the application:

1.     ANNUAL premiums are due on the first day of each policy year;

2.     SEMI-ANNUAL premiums are due on the first day of each policy year and 6 months thereafter;

3.     QUARTERLY premiums are due on the first day of each policy year and every 3 months thereafter;

4.     PRE-AUTHORIZED WITHDRAWAL premiums are due on the same day in each calendar month as the policy date. After we receive your authorization and bank approval, we will withdraw premiums as they become due.

Premiums may be paid before their due dates. You may change the frequency of your premium payments with our approval. All premiums are to be sent as provided in your premium notice. We will give a receipt to the premium payor on request.

**GRACE PERIOD**

Except for your first premium, we will allow a grace period of 31 days after the premium due date to pay the premium due. If the insured dies during a grace period, death proceeds will still be payable.

**TERMINATION**

If any premium is not paid by the end of the grace period, the premium is in default and your policy terminates on the premium due date. However, some or all of the protection of this policy may be kept in force through:

1.     Certain of the options on lapse or surrender (see Your Options on Lapse or Surrender); or

2.     An automatic premium loan (see Automatic Premium Loan).

**REINSTATEMENT**

You may reinstate this policy within 3 years of termination, in a premium class we determine, based on facts in the application for reinstatement, provided:

1. You have not surrendered it for its cash value;

2. You supply evidence which satisfies us that the insured is insurable under our underwriting rules then in effect;

3. You either repay or reinstate any policy loans and unpaid loan interest on this policy existing at termination plus interest compounded yearly; and

4. You either:

   a. Pay all past due premiums with interest at 6% compounded yearly; or

   b. If your policy is in effect as paid-up term insurance, you begin premium payments in an amount which meets the requirements of the adjustment options, without paying past due premiums.

The interest rate charged on reinstatement of policy loans is the rate of interest for loans on this policy during the time the policy terminates to the time it is reinstated.

**STATEMENT OF CASH SURRENDER VALUE**

We will provide an annual statement of your policy's cash surrender value. The first statement in a policy year is free. We reserve the right to charge a reasonable fee for additional requests for this statement.

EXHIBIT A
50

EX. A
021

# ENDORSEMENTS

SF  68

4230517

# COST OF LIVING INCREASE RIDER

We will periodically increase the face amount of your policy based on increases in the Consumer Price Index for All Urban Consumers, subject to the provisions of this rider. These increases are automatic. No evidence that the insured is insurable is required.

**LIMITATIONS AND CONDITIONS**

These limitations and conditions apply:

1. Increases are available only on every 3rd policy anniversary, as measured from the policy date, and only when the amount of increase is at least $500.

2. The amount of increase will be:

    The lesser of the Calculated Increase (as determined below) or the maximum cost of living increase shown on the data page.

    LESS

    The total of any face amount increases made during the prior year at a standard premium class (not including increases under any Guaranteed Increase Option Rider).

3. Increases are subject to your acceptance, and to the provisions of this rider and any other applicable policy provisions, including any exclusions or limitations.

4. Each increase will be made at the attained age of the insured as it would be for a similar policy adjustment under Your Adjustment Options section. The increase will reflect the premium class or classes of items shown on the data page as subject to cost of living increases.

**THE CALCULATED INCREASE**

The calculated cost of living increase is based on the all-item Consumer Price Index for All Urban Consumers (CPI) as published by the United States Department of Labor. The increase amount is determined by multiplying your policy's amounts subject to cost of living increases by an increase factor. The increase factor will be:

1. CPI 6 months prior to the cost of living increase date;

DIVIDED BY

2. CPI 42 months prior to the cost of living increase date;

LESS

3. 1.00.

If use of the Index would result in a face amount decrease, no change in face amount will be made.

(Continued on next page)

*G. David Hurd*

PRESIDENT

SF 157



**Principal Mutual Life Insurance Company**
711 High Street
Des Moines, Iowa 50309

4230517

EXHIBIT A
52

EX. A
023

We will substitute what we believe is an appropriate index for the Consumer Price Index for All Urban Consumers if:

1.  The Index is discontinued, delayed, or otherwise not available for this use; or

2.  The composition or base of, or method of calculating the Index changes so that we consider it not appropriate for calculating further cost of living increases.

**WAIVER BENEFITS**

If your policy includes a rider which provides for waiving premiums and if the data page shows that the parts of your policy which determine the cost of living increase include such protection, increases under this rider will include such waiver benefits. The premium for the waiver rider will be increased accordingly. No evidence of insurability will be required.

If an increase becomes effective during a waiver period, your policy's face amount will be increased to reflect the available cost of living increase. The premium for this increase will be waived as long as the waiver period continues.

**TERMINATION**

This rider terminates, with no further cost of living increases available, on the first of:

1.  This rider's termination date as shown on the data page;

2.  The policy anniversary following the insured's 55th birthday;

3.  Any decrease in the total face amount of your policy, except as a result of the exercise of a partial surrender option;

4.  Application of your policy's net cash value under a lapse or surrender option; or

5.  Your rejection of an automatic cost of living increase.

**REINSTATEMENT**

If this rider terminates under 3 or 5 above it will be reinstated:

1.  Whenever an underwritten increase is made in your policy's face amount, provided that increase is issued at a standard premium class; or

2.  Automatically on the policy anniversary following the insured's 21st birthday, if terminated prior to that time.

If this rider terminates under 4 above, you may later reinstate it if your policy is reinstated at a standard premium class.

**ACCEPTANCE AND REJECTION OF INCREASES**

We will automatically bill you for the additional cost of living increase amount, assuming your current Guaranteed Protection and Premium Payment Periods. You accept the increase by paying this increased premium or by adjusting the premium according to the adjustment provisions of your policy. You may reject the increase by notifying us or not paying its premium.

the Principal
Financial Group

Principal Mutual Life
Insurance Company
711 High Street
Des Moines, Iowa 50309
☑ Life
☑ Disability Income

A230517

National Life
Insurance Company
711 High Street
Des Moines, Iowa 50309
☐ Life

352711

**Insurance Application**

| 1. Proposed Insured's Name — (First - Middle - Last) | Sex | Birthdate | | | Age | Proposed Insured's Soc. Sec. No. |
|---|---|---|---|---|---|---|
| JAMES L. Ringseis | | Mo. | Day | Yr. | | |
| ☐ Single ☑ Married ☐ Widowed ☐ Divorced ☐ Separated | M | | 4/ | 45 | | 7463 |

| 2. Home address | City | County | State | Zip | State of Birth |
|---|---|---|---|---|---|
| | | MARIN | CA | 94930 | CA |

3. Owner SAME
Owner's address _____ Owner's taxpayer ID No. |__|__|__|__|__|__|__|
Relationship to Proposed Insured _____ Contingent Owner _____
If under age 15, Ownership is ☐ Permanent or ☐ Temporary to ☐ age 18 ☐ age 21 or ☐ age 25.

4. ☐ DISABILITY Insurance plan desired. Complete questions 1-4, 12-28 and D.I. Supplemental Application

5. Beneficiary and relationship to Proposed Insured:
Judith L. Ringseis - wife

Application of policy proceeds should be:
☑ Proceeds to be left at interest. Beneficiary to have election and withdrawal rights.

Contingent Beneficiary: BRIAN J. Ringseis - Son ☐ Interest Draft Account
Michael J. Ringseis - Son - in Equal Shares ☐ Pay interest _____ (Frequency)

6. LIFE plan desired AL - S-S
(For AL show premium or plan desired)
Amount $ 286,286
Planned periodic premium $ 165-61
Death ☑ Opt. 1 (Face amount)
Benefit ☐ Opt. 2 (Face amount + accum. value)
Term rider _____ for $ _____
MIB $ _____ Mo. income for ____ yrs.

☐ WDB ☐ DPA (AL) $ _____
☐ ADB: Base amt. $ _____ Term rider $ _____
☐ PAPA _____ Total ann. prem. (div. must be add'ls)
☐ Change of Insured ☐ GPO/GIS $ _____
☐ *Spouse Term $ _____
☐ *Family or ☐ *Child Term ____ units
☐ *Payor Death or Disability ☐ *Payor Death
☐ APL   *Complete Spouse, Child, Payor application

7. Dividends to ☐ Reduce premium ☐ Purchase add'l ins. ☐ Accumulate at interest ☐ Be paid in cash ☑ Improve policy
☐ AL – reduce/unscheduled ☐ EPO – return CV* ☐ EPO – return of premium*   *Balance as checked

8. Life mode ☐ Annual ☐ Semi-annual ☐ Quarterly ☑ PAC ☐ Special plan _____

9. Will policy applied for replace or change any other life or annuity insurance? ☐ Yes ☑ No
If yes complete replacement forms. Company replaced: _____ Policy No. _____

10. Life insurance in force? ☑ Yes ☐ No   If business – indicate type – keyman, buy-sell, etc.

| Company | Life amount | ADB amount | WDB | Yr. Issue | Personal or Business |
|---|---|---|---|---|---|
| Equitable | 200,000 | — | — | 88 - | Business |
| | | | | | |
| | | | | | |

11. AMENDMENTS AND ADDITIONS

12. Employer S.L.F.   Address 1324 Sir Francis Drake, Fairfax
Occupation Art Gallery - Picture Frame Duties owner Administrative
Annual earned income $ 33,000,00   Annual unearned income $ 20,000 -

13. Personal doctor Dr. McAllister
Address 11 Professional, San Rafael, Plaza 94901
Date last seen 3/91 Reason physical
Findings good

| 14. FAMILY RECORD | Age if Living | Age at Death | Cause of Death |
|---|---|---|---|
| Father/Mother | / | 53. 169 | prostate cancer |
| Brothers/Sisters | 1/2 50 | 3/ | processio |

15. Height 5'11   Weight 175

16. a) Tobacco use ☐ Current ☑ Past ☐ Never
(if "Never," skip part b)
b) Type/frequency (i) ☐ Cigarettes _____ pks/day
☐ ____ Pipes full/day ☐ ____ Cigars/day ☐ Chew
(ii) Date last used 1982 -

Weight change in last year ____ lbs. ☐ Gain ☐ Loss
Reason _____

AA 401

Page 1


the **Principal**
Financial
Group

Insurance Company
711 High Street
Des Moines, Iowa 50309

Insurance Company
711 High Street
Des Moines, Iowa 50309

**Insurance
Application**    Page 2

|  |  | Yes | No |
|---|---|---|---|
| 17. | Have you, or do you plan to engage in ultra light flying, scuba or sky diving, car or other type of racing? | ☐ | ☒ |
| 18. | Do you plan to fly or have you within the last five years flown as a pilot, student pilot or crew member? | ☐ | ☒ |
| 19. | Do you plan to live or travel outside of the U.S.? | ☐ | ☒ |
| 20. | Have you ever had life or disability insurance rated, ridered, modified or declined? | ☐ | ☒ |
| 21. | Driver's license number $N0\ 433920$. In the last 3 years have you been charged with or had 2 or more motor vehicle moving violations or accidents, suspension or revocation of your license, driving while intoxicated? | ☐ | ☒ |
| 22. | Have you in the last five years been arrested for other than traffic violations? | ☐ | ☒ |
| 23. | Within the last 5 years have you been treated or counseled or joined an organization for alcohol or drug use or used amphetamines, barbiturates, sedatives, LSD, marijuana, cocaine, heroin, or morphine? | ☐ | ☒ |

"Yes" answers to 17 and 18 require Sports and/or Aviation Statement respectively. Explain or give reasons if "Yes" for questions 19-23.

| 24. | Within the last 10 years have you been treated for or had any indication of: | Yes | No |
|---|---|---|---|
| a. | Disease of the heart or circulatory system including high blood pressure, chest pain or stroke? | ☐ | ☒ |
| b. | Respiratory disorder including asthma, emphysema, or other lung disorder? | ☐ | ☒ |
| c. | Cancer or tumors? | ☐ | ☒ |
| d. | Mental or emotional disorder, seizures, or disorder of the brain or nervous system? | ☐ | ☒ |
| e. | Diabetes, thyroid, breast, prostate or glandular disorder? | ☐ | ☒ |
| f. | Disorder of the stomach, liver, gallbladder, pancreas or digestive tract including colitis or ulcers? | ☐ | ☒ |
| g. | Disorder of the kidneys, urinary or reproductive system, venereal or other infectious disease? | ☐ | ☒ |
| h. | Disease or disorder of the skin, eyes, ears, spine, back or joints including arthritis? | ☐ | ☒ |

| 25. | Have you ever been treated for or diagnosed as having Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC) or any immune disorder? | ☐ | ☒ |
|---|---|---|---|
| 26. | Are you now under any medication, treatment or therapy? | ☒ | ☒ |
| 27. | Other than noted above, have you in the last 5 years seen a doctor, counselor, therapist or had any illness, injury, surgery, diagnostic test or treatment? | ☒ | ☐ |

28. Details of "Yes" answers to questions 24-27. Circle condition.

| No. | Date | Details – Include diagnoses, treatment, duration and results. | Name and address of doctor or medical facility |
|---|---|---|---|
| 27. | 12/83 | HAD - Muscle pull - in Pectural - Region - went to Dr - had test. No Abnormalities - or Reoccurrance. | Dr Sklar. 1260 S. Eliseo GREENBREA, CA (415) 461-0666 |
| 26. | 8/91- | Therapy FOR - Death of Brother psycho therapy - | Dr Depaoli Sacramento St. San Francisco, CA |



**Principal**
Financial Group

Principal Mutual Life
711 High Street
Des Moines, Iowa 50309

Principal National Life Insurance Company
711 High Street
Des Moines, Iowa 50309

**Insurance Application** Page 3

As part of our routine underwriting procedure, you may receive a phone call from the Home Office in Des Moines. The purpose of this call is to obtain personal and financial information needed to evaluate your insurability. Your answers will be kept strictly confidential.

Do you prefer to be interviewed rather than another family member? ☑ Yes ☐ No

May we call you at work? ☑ Yes ☐ No

Home phone ( ████ ) *5 3 2 9.* Area Code

Business phone ( ████ ) *-8 1 2 1.* Area Code

May we talk to your spouse? ☑ Yes ☐ No

Spouse's business phone ( ____ ) Area Code

Special Instructions: *plEAsE cAll BetweEn - 11 Am & 5 pm PT. At. WoRk.*

I represent that all statements in this application are true and complete to the best of my knowledge and belief. I understand they are the basis of any insurance issued and that misrepresentations could mean denial during the contestable period of an otherwise valid claim.

I agree that, except as the Conditional Receipt provides, the Company shall incur no liability unless: (1) a policy is issued (2) the policy is received and accepted by the owner and (3) the first premium is paid. I agree that these three must occur while, as far as the owner knows, there has been no change since the date of this form in the health or any other factor affecting the insurability of any person proposed for insurance. I agree that only the Home Office is authorized to pass on insurability or to make, change or discharge any contract or waive any of the Company's rights. I agree that the right to change the beneficiary is reserved to the owner unless otherwise provided in question 5. Any change in issue age, amount, class, plan or benefits made by the Company shown under "Amendments" is subject to my written ratification.

☐ This application is COD or ☑ I have paid $ *105.—* for ☐ Life ☐ Disability Insurance. If money was paid, I have been given the Conditional Receipt. In return I have read, understand, and agree to its terms.

I authorize any doctor, hospital, clinic, health care provider, insurance (or reinsuring) company, consumer reporting agency, my insurance agent, employer, family member, friend, neighbor, lawyer, accountant, roommate or business associate having personal information (including physical, mental, drug or alcohol use history) regarding me or any named dependent, to provide to the Company, its representatives or reinsurers, any such data.

I authorize the Company to conduct a Personal Telephone Interview in connection with my application for insurance.

I authorize the MIB, Inc. to furnish the above data to the Company or its reinsurers.

I authorize the Company to release any such data to its reinsurers, MIB, Inc., or as required by law or as provided in the Notice of Information Practices.

I understand that the data obtained by use of this Authorization will be used by the Company to determine eligibility for insurance.

I have received a copy of "Notice of Insurance Information Practices" which includes notice required by any Fair Credit Reporting Act. It also describes MIB, Inc.

I agree that this authorization shall be valid for two years from the earlier of: (1) the date of this application, or (2) the date of my policy. I may revoke this authorization for information not then obtained. Such revocation must be in writing. It will not be effective until received at the Company's Home Office.

I agree a photocopy of this authorization shall be as valid as the original. I have received a copy of this authorization.

_____
Signature of Owner (if other than Proposed Insured)
If Corporation, Officer (indicate title) other than Proposed Insured must sign.

✗ _____
Signature of Proposed Insured
(only if over age 9)

_____
Signature of Spouse if Spouse Term or Family Term is being applied for.

Signed at *Finlay Ca* *9-5-91.*
City    State    Date

_____
Signature of Parent if Proposed Insured is under age 15 and Parent has not signed as Owner.

Witness _____
Agent

AA 401

**the Principal Financial Group**

Principal Mutual Life
711 High Street
Des Moines, Iowa 50309
[X] Life
[ ] Disability Income

Principal National Life
711 High Street
Des Moines, Iowa 50309
[ ] Life

**Medical Questionnaire**

H230517

| | | |
|---|---|---|
| Print full name of Proposed Insured | JAMES Rogers | Born: Mo. ████ Yr. ██ |

1a. Name of your doctor M. McAllister  b. Date last seen Aug 1991
Address — 11 Professional Center Pkwy Reason Routine & CPE - no labs
San Raful, Ca.  Findings none

2. Tobacco use [ ] Current [X] Past [✓] Never (If "never," skip No. 3)

3a. Type/frequency [ ] Cigarettes ____ pks/day [ ] ____ Pipes full/day [ ] ____ Cigars/day [ ] Chew  b. Date last used ____

4a. List weight change in last year ____ [ ] Gain [ ] Loss  b. Reason ____

| | | Yes | No | DETAILS OF "yes" answers. List question number and circle item. List diagnoses, dates, durations. Give names and addresses of all doctors, hospitals and medical facilities. |
|---|---|---|---|---|
| 5. | Any family history of heart or kidney disease, high blood pressure, diabetes or cancer? | [X] | [ ] | |
| 6. | Within the last 10 years, have you been treated for or had any: | | | |
| a. | Heart disease, murmur, heart attack, chest pain, high blood pressure, rapid or irregular heart beat, anemia or disorder of the blood, blood vessels or disorder of the lymph system? | [ ] | [X] | |
| b. | Shortness of breath, asthma, bronchitis, emphysema, pneumonia, pleurisy, TB or disease of the lungs? | [ ] | [X] | |
| c. | Cancer, tumor, cyst or growth of any kind, or skin disorder? | [ ] | [X] | |
| d. | Stroke, paralysis, migraine headaches, dizziness, loss of consciousness, seizures, neuritis, or disease of the brain or nervous system? | [ ] | [X] | |
| e. | Mental disorder or nervous breakdown, including anxiety or depression? | [ ] | [X] | |
| f. | Diabetes, thyroid or glandular disorder? | [ ] | [X] | |
| g. | Ulcers, colitis, ileitis, hernia, any disorder of the stomach, liver, gallbladder, pancreas or digestive tract? | [ ] | [X] | |
| h. | Sugar, protein, blood or pus in urine, stone or kidney or urinary disorder? | [ ] | [X] | |
| i. | Disorder of the reproductive organs, breast disorder, veneral disease or other infectious disease? | [ ] | [X] | |
| j. | Arthritis, gout, back or spinal disorder, deformity, loss of limb, disorder of the muscles, bones, tendons, ligaments or joints? | [X] | [ ] | |
| k. | Disorder of the eyes, ears, nose or throat, or any allergies? | [ ] | [X] | |
| l. | AIDS, AIDS related complex, or immune disorder? | [ ] | [X] | |
| 7. | Are you now under any medication treatment or therapy? | [ ] | [X] | |
| 8. | Other than noted above, have you in the last 5 years: | | | |
| a. | Had a checkup, doctor visit, illness, injury or surgery? | [ ] | [X] | |
| b. | Been advised to have any test, hospitalization, or surgery which has not been done? | [ ] | [X] | |
| c. | Had an EKG, stress test, x-ray, or other diagnostic test? | [X] | [ ] | |

Handwritten notes in details section:
2.) Quit smoking 3 yrs ago.

5.) Mother - cancer - died at age 69.

6j.) Has a back disability as a result of lifting people while being a fireman - he receives a pension for such. now.

8c.) Scheduled for other half of CPE of Aug '91 for his routine labs tests. Blood/UA stool etc.

Stamps: RECEIVED NOV 1 1991 PACIFIC COAST SERVICES

I represent that these statements are true and complete to the best of my knowledge and belief. They are a part of my insurance application.

Signed at ___ Fairfax ___ Ca. ___
City    State

Signature of Proposed Insured ___

Date 10/17/91

Witness ___

[ ] M.D. [ ] D.O. [Para Med]

AA 388 CA    7-1-86


**the Principal**
Financial
Group

**Principal Mutual** | **Principal National** | **Benefit**
**Life Insurance Company** | **Life Insurance Company** | **Instructions**

Mailing Address: Des Moines, Iowa 50392-0001

Insured _____ James L. Ringseis _____ Policy No. _____ 4230517 _____

## Beneficiary Designation

| Name | Relationship | Date of Birth |

**Primary Beneficiary**

Judith L. Ringseis        wife

**Contingent Beneficiary**

Brian J. Ringseis        son

Michael J. Ringseis        son

The Provision contained in either of the following paragraphs shall be effective only if an "X" is inserted in the box immediately preceding such paragraphs.

☐ and any children of the marriage of the Insured and the Primary Beneficiary by birth or legal adoption.

☐ The Instructions for distribution of a Contingent Beneficiary's share will be subject to the following provisions: If any Contingent Beneficiary is not living when proceeds become payable to the Contingent Beneficiary, or if any Contingent Beneficiary dies while proceeds payable to the Contingent Beneficiary are under a Benefit Option, the proceeds payable to that Contingent Beneficiary will be paid equally in single sums to any then living children of that Contingent Beneficiary.

**Final Beneficiary**

none designated

Upon the death of the Insured, all amounts due under this Policy and the commuted value of all payments due or which become due after the Insured's death under any rider based on the life of the Insured (hereafter called the proceeds) will be applied equally (unless fractions are indicated) for each Primary Beneficiary under the Interest Option (Proceeds Left At Interest Option). Interest will be paid to each Primary Beneficiary _____ annually _____. A Primary Beneficiary may change the frequency of his or her interest payments.

jd

EE 3324-5

(Page 1)

A Primary Beneficiary may, at any time, withdraw all or any portion from his or her Interest Option. The amount of each withdrawal must be at least $100 and not more than 3 withdrawals may be made in any Contract year.

A Primary Beneficiary may elect that the proceeds be applied for his or her benefit under any other Benefit Option. The Life Income Option must be elected within two years of the Insured's death and the election must specify the minimum payment period desired and the date on which the first income payment is to be made. A Primary Beneficiary may at any time withdraw the commuted value of his or her guaranteed payments under any Benefit Option elected.

If a Primary Beneficiary has elected another Option but dies while receiving guaranteed payments, the guaranteed payments will be continued in equal shares (unless fractions are indicated) to each then living Primary Beneficiary. If no Primary Beneficiaries are then living, the guaranteed payments will be continued in equal shares (unless fractions are indicated) to each then living Contingent Beneficiary. A Primary or Contingent Beneficiary may at any time, withdraw the commuted value of his or her guaranteed payments.

If any Primary Beneficiary dies while receiving interest payments, the amount remaining under his or her Interest Option will be transferred in equal shares (unless fractions are indicated) to each then living Primary Beneficiary and applied in the manner provided for his or her share of the proceeds.

Upon the death of the Insured, if none of the Primary Beneficiaries are living, or if the last Primary Beneficiary to survive the Insured dies while receiving interest payments, the proceeds or amount remaining under the Interest Option will be transferred in equal shares (unless fractions are indicated) to each then living Contingent Beneficiary.

A Contingent Beneficiary's share will be applied under the Interest Option and interest will be paid annually. A Contingent Beneficiary may change the frequency of his or her interest payments. A Contingent Beneficiary may make withdrawals from his or her Interest Option. The amount of each withdrawal must be at least $100 and not more than 3 withdrawals may be made in any contract year. When a Contingent Beneficiary becomes 30 years old, any amount remaining under his or her Interest Option will be paid in a single sum to that Contingent Beneficiary.

If any Contingent Beneficiary dies while receiving interest payments, the amount under his or her Interest Option will be transferred in equal shares (unless fractions are indicated) to each then living Contingent Beneficiary and applied in the manner provided for his or her share of the proceeds.

Upon the death of the last Primary and Contingent Beneficiary to survive the Insured, the value of the proceeds remaining under any Option will be paid in equal shares (unless fractions are indicated) to the then living Final Beneficiaries. If no Final Beneficiary is then living, the value of the proceeds will be paid in a single sum to the estate of the last Beneficiary to die.

Upon the death of the Insured, if none of the Primary, Contingent, or Final Beneficiaries are living, the proceeds will be paid in a single sum to the Owner or the Owner's estate.

The Insured's spouse, if named as Primary Beneficiary, may change the above provisions for payment of his or her share of the proceeds at any time after the death of the Insured. The Insured's spouse may, with the right to change, designate his or her estate as beneficiary or any other beneficiaries and the manner of settlement under his or her share of the proceeds. A change of beneficiary or manner of settlement must be requested in writing and approved by the Company. The Company has the right to require the Supplementary Contract be sent to its Home Office to record the change.

Unless authorized in these instructions, no beneficiary may anticipate, commute or assign any payments under these Instructions. The payments will not be subject to encumbrance or legal process, nor to the claims of any Beneficiary's creditors.

These Benefit Instructions are subject to all applicable provisions of this Policy. The Company need not apply an amount under a Benefit Option less than the minimum specified in this Policy. If a requested periodic payment to any Beneficiary would be less than $10.00, the payment frequency will be changed to quarterly, semi-annually, or annually, in order to provide for periodic payments of at least $10.00.

Any indebtedness to the Company secured by this Policy will be deducted from the proceeds before they are applied under these Benefit Instructions.

Any interest earned between the last payment date and the death of any Beneficiary will be paid to the succeeding Beneficiaries. Interest will be paid on any amount withdrawn from the last payment date to the date of withdrawal. The Company may delay payment of a withdrawal for up to 6 months.

If this Policy is assigned, the Company will pay the assignee's claim in a single sum. Any remaining proceeds will be applied under these Benefit Instructions.

The Company may rely on an affidavit by any one of the Beneficiaries regarding the ages, dates of death, names, and addresses of the other Beneficiaries. The Company will be relieved of any and all further liability after making payments in accordance with such affidavit.

The Policyowner may change or revoke these Instructions by written notice in a form satisfactory to the Company.

If these Benefit Instructions apply to more than one Policy, the proceeds of all such Policies will be paid in accordance with these Benefit Instructions.

These Benefit Instructions revoke all prior Benefit Instructions and Beneficiary Designations.

These Benefit Instructions will be effective only if approved and recorded by the Company.

All references to Benefit Instructions and Benefit Options also refer respectively to Settlement Instructions and Settlement Options.

If the first paragraph of the Settlement Options contains the words "while this Policy is not assigned," it is requested that this Policy be amended by striking such words.

These Instructions are not intended to alter "Simultaneous Death" provisions, if any, in or endorsed on this Policy.

These Benefit Instructions have been approved and recorded at Des Moines, Iowa, on the date of issue of this Policy.

Principal Mutual Life Insurance Company or Principal Mutual Life Insurance Company as Administrator for Principal National Life Insurance Company. The issuer of the policy is herein referred to as "Company."

EXHIBIT A
60

**ADJUSTABLE LIFE POLICY.** Benefits payable at death during the Guaranteed Protection Period with level premiums payable to age stated on the Data Page. Adjustable face amount, premium, Guaranteed Protection Period and Premium Payment Period. Participating.

68                                                                                                    4230517

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Jack B. Winters, Jr. (SBN 82998); Sarah Ball (SBN 292337)
WINTERS & ASSOCIATES, 8489 La Mesa Blvd., La Mesa, CA 91942-5335

TELEPHONE NO.: 619.234.9000    FAX NO.: 619.750.0413
EMAIL ADDRESS: jwinters@singletonschreiber.com; sball@einsurelaw.com
ATTORNEY FOR (Name): Plaintiff JUDITH L. RINGSEIS, Individually, and on Behalf of the Class

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MARIN
STREET ADDRESS: 3501 Civic Center Drive
MAILING ADDRESS: P.O. Box 4988
CITY AND ZIP CODE: San Rafael, CA 94903
BRANCH NAME: HALL OF JUSTICE

**ELECTRONICALLY FILED**
Superior Court of California
County of Marin
04/21/2025
James M. Kim, Clerk of the Court
By: J. Chen, Deputy

CASE NAME:
JUDITH L. RINGSEIS v. PRINCIPAL LIFE INSURANCE COMPANY, an Iowa Corporation

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: CV0006009 |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $35,000) | [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter  [ ] Joinder   Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition (not specified above) (43)

2. This case [x] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action (specify): One: EQUITABLE RELIEF UNDER CALIFORNIA'S UNFAIR COMPETITION LAWS
5. This case [x] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)
Date: April 21, 2025
JACK B. WINTERS, JR.

_____
(TYPE OR PRINT NAME)

▶

_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

EXHIBIT A
63

CM-200

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:
DEFENDANT/RESPONDENT:

| **NOTICE OF SETTLEMENT OF ENTIRE CASE** | CASE NUMBER: |
|---|---|
| | JUDGE: |
| | DEPT.: |

---

### NOTICE TO PLAINTIFF OR OTHER PARTY SEEKING RELIEF

You must file a request for dismissal of the entire case within 45 days after the date of the settlement if the settlement is **unconditional.** You must file a dismissal of the entire case within 45 days after the date specified in item 1b below if the settlement is **conditional.** Unless you file a dismissal within the required time or have shown good cause before the time for dismissal has expired why the case should not be dismissed, the court will dismiss the entire case.

---

**To the court, all parties, and any arbitrator or other court-connected ADR neutral involved in this case:**

1. This entire case has been settled. The settlement is:
   a. ☐ **Unconditional.** A request for dismissal will be filed within 45 days after the date of the settlement.
   Date of settlement:
   b. ☐ **Conditional.** The settlement agreement conditions dismissal of this matter on the satisfactory completion of specified terms that are not to be performed within 45 days of the date of the settlement. A request for dismissal will be filed no later than *(date):*

2. Date initial pleading filed:

3. Next scheduled hearing or conference:
   a. Purpose:
   b. ☐ (1) Date:
      (2) Time:
      (3) Department:

4. Trial date:
   a. ☐   No trial date set.
   b. ☐ (1) Date:
      (2) Time:
      (3) Department:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶

_____
(TYPE OR PRINT NAME OF  ☐ ATTORNEY  ☐ PARTY WITHOUT ATTORNEY)

_____
(SIGNATURE)

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-200 [Rev. January 1, 2007] | **NOTICE OF SETTLEMENT OF ENTIRE CASE** | Cal. Rules of Court, rule 3.1385<br>*www.courts.ca.gov* |
|---|---|---|

**EXHIBIT A**
64

CM-200

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

### PROOF OF SERVICE BY FIRST-CLASS MAIL
#### NOTICE OF SETTLEMENT OF ENTIRE CASE

*(NOTE: You cannot serve the **Notice of Settlement of Entire Case** if you are a party in the action. The person who served the notice must complete this proof of service.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Settlement of Entire Case* by enclosing it in a sealed envelope with postage fully prepaid and *(check one):*

   a. ☐ deposited the sealed envelope with the United States Postal Service.

   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Settlement of Entire Case* was mailed:

   a. on *(date):*

   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:

   a. Name of person served:             c. Name of person served:

      Street address:                       Street address:
      City:                                 City:
      State and zip code:                   State and zip code:

   b. Name of person served:             d. Name of person served:

      Street address:                       Street address:
      City:                                 City:
      State and zip code:                   State and zip code:

   ☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

5. Number of pages attached _____ .

   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____          ▶   _____
(TYPE OR PRINT NAME OF DECLARANT)                          (SIGNATURE OF DECLARANT)

EXHIBIT A
65

| | | |
|---|---|---|
| **Superior Court of the State of California County of Marin** 3501 Civic Center Dr PO Box 4988 San Rafael, CA 94913-4988 | | *FOR COURT USE ONLY* **ELECTRONICALLY FILED** Superior Court of California County of Marin **04/22/2025** James M. Kim, Clerk of the Court J. Chen, Deputy |
| Judith L. Ringseis vs. Principal Life Insurance Company, an Iowa Corporation | | |
| **Notice – Judicial Assignment** | | **Case Number:** CV0006009 |

**To All Parties and their Attorneys of Record:**

This case has been assigned to **Judge Stephen P. Freccero** for all purposes. All future hearings will be scheduled before this assigned Judge in **Courtroom A**.

**Notice**: This assignment for all purposes must be provided to all non-appearing parties by the moving party.

---

I am over the age of 18 years and not a party to the action above. My business address is 3501 Civic Center Dr, San Rafael, CA 94913. On April 22, 2025, I served this **Notice – Judicial Assignment** on the interested parties in said action to the addresses indicated below:

**Jack Winters, Jr.**
jwinters@singletonschreiber.com

Electronically Served CCP1013(g)

I declare under penalty of perjury, that the foregoing is true and correct.

**James M. Kim**
**Clerk of the Court and Executive Officer**
Superior Court of the State of California
County of Marin

Executed at San Rafael, California
On: April 22, 2025

By: J. Chen, Deputy Clerk

EXHIBIT A
66

| | |
|---|---|
| **Superior Court of the State of California County of Marin** 3501 Civic Center Dr PO Box 4988 San Rafael, CA  94913-4988 | *FOR COURT USE ONLY* **ELECTRONICALLY FILED** Superior Court of California County of Marin **04/22/2025** James M. Kim, Clerk of the Court J. Chen, Deputy |
| Judith L. Ringseis vs. Principal Life Insurance Company, an Iowa Corporation | |
| **Notice – Case Management Conference – GC68600** | **Case Number:** CV0006009 |

Pursuant to Local Rule (LR) 2.3, the Plaintiff(s) must serve the following documents together with the complaint on all Defendant(s):

- Notice – Case Management Conference (a copy of this notice)
- Case Management Statement (Judicial Council Form CM-110)
- Notice of Settlement of Entire Case (Judicial Council Form CM-200)
- Alternative Dispute Resolution Informational Notice (CV006)

1. The parties/counsel to this action shall comply with the filing and service deadlines in LR 2.5 and CRC3.110.
2. All parties must appear for:
   **Case Management Conference** on **September 9, 2025** at **9:00 am** in **Courtroom A**.
3. The parties must be familiar with the case and be fully prepared to discuss the suitability of the case for binding or non-binding arbitration, mediation, or neutral case evaluation. Counsel must discuss ADR options with their clients prior to attending the Case Management Conference (CMC) and should be prepared to discuss with the Court their authority to participate in ADR.
4. CMC Statements must be filed with the Court and served on all parties <u>at least 15 calendar days</u> before the CMC. **(Late filing may result in the issuance of sanctions.)**

---

I am over the age of 18 years and not a party to the above action. My business address is 3501 Civic Center Dr, San Rafael, CA 94913. On April 22, 2025, I served this **Notice – Case Management Conference** on the interested parties in said action to the addresses indicated below:

**Jack Winters, Jr.**
8489 La Mesa Boulevard
La Mesa, CA 91942

Mailed CCP1013(a)

I declare under penalty of perjury, that the foregoing is true and correct.

**James M. Kim,**
**Clerk of the Court and Executive Officer**
Superior Court of the State of California,
Executed at San Rafael, California                 County of Marin
On: **April 22, 2025**                                         By: J. Chen,Deputy Clerk

---

EXHIBIT A
67

**MARIN COUNTY SUPERIOR COURT**
3501 Civic Center Drive
P.O. Box 4988
San Rafael, CA 94913-4988
(415) 444-7040



## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATIONAL NOTICE
(California Rule of Court 3.221)

**The plaintiff <u>must</u> serve a copy of this notice with the complaint on all parties to this case.**

Alternative Dispute Resolution (ADR) is a way of solving legal disputes without going to trial.  Using ADR may have a variety of benefits, depending on the type of ADR process used and the  circumstances of the particular case.

## <u>ADVANTAGES OF ADR</u>

### Save Time

A dispute often can be settled or decided much sooner with ADR; often in a matter of months, even weeks, while bringing a lawsuit to trial can take a year or more.

### Save Money

When cases are resolved earlier through ADR, the parties may save some of the money they would have spent on attorney fees, court costs, experts' fees, and other litigation expenses.

### Increase Control Over the Process and the Outcome

In ADR, parties typically play a greater role in shaping both the process and its outcome.  In most ADR processes, parties have more opportunity to tell their side of the story than they do at trial.  Some ADR processes, such as mediation, allow the parties to fashion creative resolutions that are not available in a trial.  Other ADR processes, such as arbitration, allow the parties to choose an expert in a particular field to decide the dispute.

### Preserve Relationships

ADR can be a less adversarial way to resolve a dispute.  For example, an experienced mediator can help the parties effectively communicate their needs and point of view to the other side. This can be an important advantage where the parties have a relationship to preserve.

### Increase Satisfaction

In a trial, there is typically a winner and a loser.  The loser is not likely to be happy, and even the winner may not be completely satisfied with the outcome.  ADR can help the parties find win-win solutions and achieve their real goals.  This, along with all of ADR's other potential advantages, may increase the parties' overall satisfaction with both the dispute resolution process and the outcome.

EXHIBIT A
68

## DISADVANTAGES OF ADR

If the case is resolved using ADR, the parties forgo their right to a public trial and they do not receive a decision by a judge or jury.  If the case is not resolved using ADR and it proceeds to trial, the overall costs of the case may increase.

## TYPES OF ADR

### Mediation

In mediation, an impartial person called a "mediator" helps the parties try to reach a mutually acceptable resolution of the dispute.  The mediator does not decide the dispute but helps the parties communicate so they can try to settle the dispute themselves.  Mediation leaves control of the outcome with the parties.

### Settlement Conferences

Settlement conferences may be either mandatory or voluntary.  In both types of settlement conferences, the parties and their attorneys meet with a judge or a neutral person called a "settlement officer" to discuss possible settlement of their dispute.  The judge or settlement officer does not make a decision in the case but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement.  Settlement conferences are appropriate in any case where settlement is an option.  Mandatory settlement conferences are often held close to the date a case is set for trial.

### Arbitration

In arbitration, a neutral person called an "arbitrator" hears arguments and evidence from each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are often relaxed.  Arbitration may be either "binding" or "nonbinding."  *Binding arbitration* means that the parties waive their right to a trial and agree to accept the arbitrator's decision as final.  Generally, there is no right to appeal an arbitrator's decision.  *Nonbinding* arbitration means that the parties are free to request a trial if they do not accept the arbitrator's decision.

### Neutral Evaluation

In neutral evaluation, each party gets a chance to present the case to a neutral person called an "evaluator."  The evaluator then gives an opinion on the strengths and weaknesses of each party's evidence and arguments and about how the dispute could be resolved.  The evaluator is often an expert in the subject matter of the dispute.  Although the evaluator's opinion is not binding, the parties typically use it as a basis for trying to negotiate a resolution of the dispute.

## LOCAL ADR PROGRAMS

For a Directory of Mediators and Arbitrators or information about the Modest Means Mediation Program, contact the Marin County Bar Association (MCBA) by calling (415) 499-1314 or emailing *info@marinbar.org*.  Additional information is also available on the MCBA website:  *www.marinbar.org*.

## STIPULATION TO USE ADR

If all parties in the action agree to participate in ADR, a *Stipulation to Use Alternative Dispute Resolution Process (CV002)* may be filed with the court.  This form is available at *www.marincourt.org* or in the Clerk's Office.

Please note, **you are required to complete and submit the *Notice of Settlement of Entire Case (Judicial Council Form CM-200)* within 10 days of the resolution of your case.**

---

EXHIBIT A
69

1
OPHIR JOHNA (SBN 228193)
ojohna@maynardnexsen.com
2
MAYNARD NEXSEN LLP
10100 Santa Monica Boulevard, Ste. 550
3
Los Angeles, CA 90067
Telephone:    310.596.4500
4

5
Attorneys for Defendant
Principal Life Insurance Company
6

7

8

9
**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10
**COUNTY OF MARIN**

11

| | |
|---|---|
| JUDITH L. RINGSEIS, Individually, and on Behalf of the Class, | Case No. CV0006009 |
| Plaintiff, | (Assigned for all Purposes to the Honorable Stephen P. Freccero) |
| v. | Courtroom: Dept A |
| PRINCIPAL LIFE INSURANCE COMPANY, an Iowa Corporation; and DOES 1 through 10, inclusive, | **DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S ANSWER TO PLAINTIFF JUDITH RINGSEIS'S UNVERIFIED CLASS ACTION COMPLAINT** |
| Defendants. | Complaint Filed: April 21, 2025 |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Maynard Nexsen LLP
10100 Santa Monica Boulevard
Los Angeles, CA 90067
310.596.4500

1    Defendant Principal Life Insurance Company ("Defendant") hereby answers the unverified

2    Individual and Class Action Complaint ("Complaint") of Plaintiff Judith Ringseis, individually

3    and on behalf of the class ("Plaintiff") as follows:

### ANSWER

5    1.    Defendant, in answer to the Complaint and by virtue of Section 431.30(d) of the

6    California Code of Civil Procedure, hereby files a general denial to the allegations of the Complaint

7    and, in answering all of the allegations of the Complaint, Defendant denies generally and

8    specifically each and every allegation contained therein.  Further, Defendant denies generally and

9    specifically that Plaintiff is entitled to any relief requested in the Complaint or to any award of

10    costs, or that Plaintiff has been damaged by reason of any action, conduct, and/or omission of

11    Defendant.

12    2.    Defendant denies that it is or was liable for any of the wrongful conduct alleged in

13    the Complaint, or otherwise, or at all, and further denies that Plaintiff was injured or damaged, or

14    will be injured or damaged, as a result of any conduct on the part of Defendant, either as alleged

15    in said Complaint, or otherwise, or at all.

16    3.    Defendant denies that by reason of any act or acts, or by virtue of any of the

17    allegations contained in the Complaint, or otherwise, that Plaintiff is, was, or will be entitled to

18    any of the relief sought in the Complaint, or otherwise, or at all.

### AFFIRMATIVE DEFENSES

20    In further response to the Complaint, Defendant asserts the following defenses. The

21    denomination of any matter below as a defense is not an admission that Defendant bears the burden

22    of persuasion, burden of proof, or burden of producing evidence with respect to any such matter.

### FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim for Relief)

25    1.    The Complaint, and each cause of action therein, fails to state facts sufficient to

26    constitute a cause of action as against Defendant.  *E.g.*, C.C.P. § 430.10(e).

27

28

Maynard Nexsen LLP
10100 Santa Monica Boulevard
Los Angeles, CA 90067
310.596.4500

1

## SECOND AFFIRMATIVE DEFENSE

2

### (Failure to Mitigate)

3      2.      Plaintiff has failed, refused, and/or neglected to take reasonable and/or necessary

4  steps to mitigate any damages allegedly incurred as a result of Defendant's alleged conduct, thus

5  barring, or at least reducing, any recovery in this action.

6

## THIRD AFFIRMATIVE DEFENSE

7

### (No Control Over Third Parties)

8      3.      Any damage or loss, if any, was the result of the negligence or the acts or omissions

9  of third parties over which Defendant exercised no control, including Plaintiff, and those who acted

10 on his behalf. Accordingly, Defendant's liability, if any, is limited in direct proportion to the

11 percentage of fault actually attributable to Defendant.

12

## FOURTH AFFIRMATIVE DEFENSE

13

### (Waiver)

14     4.      Plaintiff has waived his right, if any, to seek the relief requested in the Complaint.

15

## FIFTH AFFIRMATIVE DEFENSE

16

### (Estoppel)

17     5.      Plaintiff, by his acts and conduct is estopped from alleging the claim asserted in the

18 Complaint.

19

## SIXTH AFFIRMATIVE DEFENSE

20

### (Unclean Hands)

21     6.      Defendant is informed and believes, and on that basis alleges, that the equitable

22 doctrine of unclean hands precludes Plaintiff from recovering the relief requested.

23

## SEVENTH AFFIRMATIVE DEFENSE

24

### (Laches)

25     7.      Defendant alleges that Plaintiff's claim alleged in the Complaint is barred by the

26 doctrine of laches.

27

28

Maynard Nexsen LLP
10100 Santa Monica Boulevard
Los Angeles, CA 90067
310.596.4500

Maynard Nexsen LLP
10100 Santa Monica Boulevard
Los Angeles, CA 90067
310.596.4500

## EIGHTH AFFIRMATIVE DEFENSE

### (Losses Caused by Plaintiff)

8.    Defendant alleges that Plaintiff's losses, injuries or damages (if there were any losses, injuries or damages) were proximately caused by Plaintiff, constituting an intervening or superseding cause, and precluding liability of Defendant.

## NINTH AFFIRMATIVE DEFENSE

### (Losses Caused by Third Parties)

9.    Defendant alleges that Plaintiff's losses, injuries or damages (if there were any losses, injuries or damages) were proximately caused by third parties, constituting an intervening or superseding cause, and precluding any liability on the part of Defendant.

## TENTH AFFIRMATIVE DEFENSE

### (No Prejudgment Interest)

10.    Plaintiff is not entitled to any award of prejudgment interest.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Assumption of Risk)

11.    Defendant alleges that at all times herein mentioned, Plaintiff, with full knowledge of all risks attendant thereto, voluntarily and knowingly assumed any and all risks attendant upon his conduct, including any purported damages and/or loss alleged to be related thereto and proximately caused thereby.

## TWELFTH AFFIRMATIVE DEFENSE

### (Lack of Causation)

12.    Defendant did not knowingly commit any wrongful act or omission relevant to this action.  Defendant exercised due care and diligence with respect to all the matters alleged in the Complaint, and no act or omission, if any, by Defendant was the cause of any harm alleged in the Complaint.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (No Attorneys' Fees)

13.    Plaintiff is not entitled to any award of attorneys' fees under any statute, theory or

case law authority, including but not limited to Code of Civil Procedure section 1021.5.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

14.    The Complaint is barred by the applicable statute of limitations, including but not limited to California Business & Professions Code section 17208, and any applicable contractual limitations period or applicable common and statutory law.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Failure to Perform)

15.    Defendant alleges that Plaintiff and the Class of persons Plaintiff seeks to represent failed to meet or perform all necessary covenants, conditions, and promises required to be performed in accordance with the terms and conditions of the subject insurance policies.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (No Claim as to 60-Day Notice)

16.    With respect to the 60-day grace period requirement alleged in the Complaint, the Plaintiff or some or all of the other persons Plaintiff purports to represent cannot establish any such violation because Defendant provided 60 days' notice.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (No Claim as to 30-Day Notice)

17.    With respect to the 30-day notice requirement alleged in the Complaint, the Plaintiff or some or all of the other persons Plaintiff purports to represent cannot establish any such violation because Defendant provided more than 30 days' notice.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Inadequate Class Allegations)

18.    Plaintiff's class action allegations should be dismissed since Plaintiff is unable to demonstrate the requisite class interest to maintain a class action, or otherwise satisfy the prerequisites for class certification pursuant to applicable statutes, local rules and the case law construing those statutes and rules.

Maynard Nexsen LLP
10100 Santa Monica Boulevard
Los Angeles, CA 90067
310.596.4500

Maynard Nexsen LLP
10100 Santa Monica Boulevard
Los Angeles, CA 90067
310.596.4500

## NINETEENTH AFFIRMATIVE DEFENSE

### (Class Not Ascertainable or Manageable)

19.　Plaintiff's class action allegations should be dismissed since Plaintiff is unable to demonstrate a manageable class to maintain a class action.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Class Representatives Not Typical)

20.　Plaintiff's class action allegations should be dismissed since Plaintiff lacks standing to represent the unnamed class members, or the claims of Plaintiff are not typical of the unnamed Class members.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Class Action Not Superior Vehicle)

21.　Plaintiff's class action allegations should be dismissed since a class action is not a superior vehicle to other methods of fairly and efficiently resolving the claims alleged herein.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (No Private Right of Action)

22.　California Insurance Code Sections 10113.71 and 10113.72 do not create a private right of action for recovery against an insurer like Defendant.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Offset as to Any Unpaid Premiums from Death Benefits)

23.　To the extent that benefits are to be paid to any beneficiary(ies) even though the policy(ies) had lapsed, then Defendant is entitled to an offset for any premiums or other sums that would have been due and owing between the date of the last paid premium and the death of the insured.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Offset as to Any Unpaid Premiums if Policy Reinstated)

24.　Defendant alleges that Plaintiff failed to meet or perform all necessary covenants, conditions, and promises required to be performed in accordance with the terms and conditions of the subject insurance policy.

Maynard Nexsen LLP
10100 Santa Monica Boulevard
Los Angeles, CA 90067
310.596.4500

1

2

## **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

**(Restitution/Injunctive Relief Claim Under Bus. & Prof. Code § 17200 Is Not Viable)**

3        25.        To the extent that Plaintiff claims damages under Business and Professions Code

4    sections 17200 *et seq.* ("section 17200"), the claim should be dismissed since the only monetary

5    award permitted under section 17200 is restitution, and Plaintiff possesses no viable claim for

6    restitution against Defendant.  Further, Plaintiff may not seek injunctive relief.

7

## **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

8

## **(No Claim as to Secondary Designation Notice)**

9        26.        With respect to the secondary designation requirement alleged in the Complaint,

10    the Plaintiff or some or all of the other persons Plaintiff purports to represent cannot establish any

11    such violation because Defendant provided a secondary designation notice.

12

## **TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

13

## **(Reservation of Defenses)**

14        27.        Defendant reserves the right to raise additional affirmative defenses and to

15    supplement those asserted herein upon discovery and further information regarding the causes and

16    upon further investigation.

17

18        WHEREFORE, Defendant prays for judgment as follows:

19        1.        That Plaintiff take nothing by reason of the Complaint and that the same

20               be dismissed;

21        2.        For entry of judgment in favor of Defendant and against Plaintiff;

22        3.        For costs of suit incurred herein, including such reasonable attorney's fees

23               as may be allowed by case or statutory authority and/or agreement of the

24               parties; and

25        4.        For such other relief as this Court may deem proper.

26

27

28

ANSWER TO COMPLAINT
Case No. CV0006009

EXHIBIT A

76

1    Dated:  May 30, 2025                          MAYNARD NEXSEN LLP

2

3                                          By:    OPHIR JOHNA

4                                                 Attorneys for Defendant Principal Life
                                                  Insurance Company
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Maynard Nexsen LLP
10100 Santa Monica Boulevard
Los Angeles, CA 90067
310.596.4500

8
ANSWER TO COMPLAINT
Case No. CV0006009

EXHIBIT A
77

## PROOF OF SERVICE

### *Ringseis v. Principal Life Insurance Company*

### Case No. CV0006009

(STATE OF CALIFORNIA, COUNTY OF LOS ANGELES)

  I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within actions; my business address is 10100 Santa Monica Blvd., Ste. 550, Los Angeles, CA 90067.

  On **May 30, 2025**, I served the document(s) entitled **DEFENDANT PRINCIPAL LIFE INSURANCE COMPANY'S ANSWER TO PLAINTIFF JUDITH RINGSEIS'S UNVERIFIED CLASS ACTION COMPLAINT** on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated below**:**

### SEE ATTACHED SERVICE LIST

☒ **(BY MAIL)**:  I placed the envelope for collection and mailing at Los Angeles, California.  The envelope was mailed with postage fully prepaid.  I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☒ **(BY E-MAIL OR ELECTRONIC TRANSMISSION)**:  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the document(s) to be sent to the person[s] at the e-mail address[es] set forth herein.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.  See Cal.R.Ct.R. 2060

  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on **May 30, 2025**, at Los Angeles, California.

_____
Lea Borys

1033236\306355864.v1

## SERVICE LIST

### *Ringseis v. Principal Life Insurance Company*

### Case No. CV0006009

WINTERS & ASSOCIATES
Jack B. Winters, Jr., Esq.
Sarah Ball, Esq.
8489 La Mesa Boulevard
La Mesa, California 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
Emails: jwinters@singletonschreiber.com
 sball@einsurelaw.com
*Attorneys for Judith L. Ringseis, Individually,*
*and on Behalf of the Class*

SINGLETON SCHREIBER, LLP
Christopher r. Rodriguez, Esq.
Andrew D. Bluth, Esq.
Michelle M. Meyers, Esq.
Trent J. Nelson, esq.
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515
Emails: crodriguez@singletonschreiber.com
abluth@singletonschreiber.com
mmeyers@singletonschreiber.com
tnelson@singletonschreiber.com
*Attorneys for Judith L. Ringseis, Individually,*
*and on Behalf of the Class*

NICHOLAS & TOMASEVIC, LLP
Craig M. Nicholas, Esq.
Alex Tomasevic, Esq.
Jake W. Schulte, Esq.
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Emails: cnicholas@nicholaslaw.org
atomasevic@nicholaslaw.org
schulte@nicholaslaw.org
*Attorneys for Judith L. Ringseis, Individually,*
*and on Behalf of the Class*

1033236\306355864.v1

EXHIBIT A
79

# ONE LEGAL®

**Confirmation #:**  32524282

**Case Title:**  Judith L. Ringseis vs. Principal Life Insurance
Company, an Iowa Corporation

Thank you for choosing One Legal. If you have any questions about this order, please email us at
support@onelegal.com.

## CASE INFORMATION

| | |
|---|---|
| **Court Name:** | Marin County, Superior Court of California |
| **Court Branch:** | Marin |
| **Case Title:** | Judith L. Ringseis vs. Principal Life Insurance Company, an Iowa Corporation |
| **Case Category:** | Civil Unlimited |
| **Case Type:** | Other Tort: Business (07) |
| **Case #:** | CV0006009 |

## ORDER DETAILS

| | |
|---|---|
| **Order Type:** | eFiling |
| **Filing order #:** | 25498366 |
| **Date/Time Submitted:** | 5/30/2025 11:15 AM PT |
| **Matter / Billing Code:** | 811215.00260 |
| **Contact Name:** | Lea Borys |
| **Attorney Name:** | Ophir Johna |
| **Email Notification:** | Contact |
| **Special Instructions:** | Good Afternoon: Please file and conform |

## DOCUMENTS

| Document Type | Document Title | Pages Uploaded |
|---|---|---|
| Answer - Complaint | Answer - Complaint | 10 |

EXHIBIT A
80

**CERTIFICATE OF SERVICE**

*Ringseis v. Principal Life Insurance Company*

**STATE OF CALIFORNIA, COUNTY OF Los Angeles**

I am a citizen of the United States and employed in Los Angeles, California, at the office of a member of the bar of this Court at whose direction this service was made. I am over the age of 18 and not a party to the within actions; my business address is 10100 Santa Monica Blvd., Ste. 550, Los Angeles, CA 90067.

On **May 30, 2025**, I served the document(s) entitled, **NOTICE OF REMOVAL** on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated below:

**SEE ATTACHED SERVICE LIST**

☒ **(BY MAIL)**: I deposited such envelope in the mail at Los Angeles, California with postage fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be placed for collection and mailing, and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit mailing in affidavit.

☒ **(BY ELECTRONIC MAIL)**: By transmitting a true copy thereof to the electronic mail addresses as indicated on the attached Service List.

I declare under penalty of perjury under the laws of the United States that the above is true and correct and was executed on **May 30, 2025**, at Los Angeles, California.

_____
Lea Borys

**SERVICE LIST**

*Ringseis v. Principal Life Insurance Company*

WINTERS & ASSOCIATES
Jack B. Winters, Jr., Esq.
Sarah Ball, Esq.
8489 La Mesa Boulevard
La Mesa, California 91942
Tel: (619) 234-9000
Fax: (619) 750-0413
Emails:
jwinters@singletonschreiber.com
 sball@einsurelaw.com
*Attorneys for Judith L. Ringseis,*
*Individually, and on Behalf of the Class*

SINGLETON SCHREIBER, LLP
Christopher r. Rodriguez, Esq.
Andrew D. Bluth, Esq.
Michelle M. Meyers, Esq.
Trent J. Nelson, esq.
1414 K Street, Suite 470
Sacramento, California 95814
Telephone: (916) 248-8478
Facsimile: (619) 255-1515
Emails:
crodriguez@singletonschreiber.com
abluth@singletonschreiber.com
mmeyers@singletonschreiber.com
tnelson@singletonschreiber.com
*Attorneys for Judith L. Ringseis,*
*Individually, and on Behalf of the Class*

NICHOLAS & TOMASEVIC, LLP
Craig M. Nicholas, Esq.
Alex Tomasevic, Esq.
Jake W. Schulte, Esq.
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Emails: cnicholas@nicholaslaw.org
atomasevic@nicholaslaw.org
schulte@nicholaslaw.org
*Attorneys for Judith L. Ringseis,*
*Individually, and on Behalf of the Class*